# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| NICHOLAS BAVAS, | Case No. 4:25-cv-00185-SHL-SBJ |
| Plaintiff, | (Removed from the Iowa District Court for Polk County), |
| | Case No: CVCV069026 |
| v. | |
| DRAFTKINGS INC., and CROWN IA GAMING LLC d/b/a/ DraftKings, | DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PETITION AT LAW AND JURY DEMAND |
| Defendants. | |

Defendants DraftKings Inc. ("DraftKings") and Crown IA Gaming LLC (collectively, "Defendants") hereby answer the allegations in the Petition at Law filed by Plaintiff Nicholas Bavas ("Plaintiff"), and further asserts the affirmative defenses set forth below. For each of Plaintiff's allegations, if an allegation is not specifically admitted below, it is hereby denied. To the extent it is necessary to deny allegations contained in headings within Plaintiff's Complaint, Defendants deny those allegations, and denies that Plaintiff is entitled to relief.

1.    COMES NOW Nicholas Bavas, by and through the undersigned attorneys and for his Petition at Law and Jury Demand states as follows:

**ANSWER:  Defendants admit that Plaintiff has purported to file this action.  Except as expressly admitted herein, Defendants deny each and every allegation in Paragraph 1.**

## PARTIES, JURISDICTION AND VENUE[1]

2.      Plaintiff Nicholas Bavas ("Bavas") is, and at all relevant times, was, a resident of Dallas County, Iowa.

**ANSWER:  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations of Paragraph 2 and, on that basis, deny such allegations.**

3.      Defendant DraftKings, Inc. ("DraftKings") is a Nevada corporation with its principal place of business in Massachusetts.

**ANSWER:  Defendants admit the allegations in Paragraph 3.**

4.      Defendant Crown IA Gaming LLC d/b/a Draftkings ("Crown IA") is a Delaware corporation licensed by the Iowa Racing and Gaming Commission to conduct sports wagering within the State.

**ANSWER:  Defendants admit that Defendant Crown IA Gaming LLC is licensed by the Iowa Racing and Gaming Commission to conduct sports wagering within Iowa.  Except as expressly admitted herein, Defendants deny each and every allegation in Paragraph 4.**

5.      On information and belief, Crown IA is a wholly owned subsidiary of Crown Gaming, Inc., which is a wholly owned subsidiary of DK Crown Holdings, Inc., which is a wholly owned subsidiary of DraftKings Holdings, Inc. which is a wholly owned subsidiary of DraftKings.

**ANSWER:  Defendants deny each and every allegation in Paragraph 5.**

6.      The amount of damages meets applicable jurisdictional requirements for the amount in controversy.

---

[1] The headings below track those used in the Complaint and are for convenience only.  To the extent that such headings themselves contain factual and legal characterizations, Defendants deny such characterizations.

**ANSWER:  Defendants state that the allegations in Paragraph 6 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants admit the amount of Plaintiff's alleged damages meets the jurisdictional requirement under 28 U.S.C. § 1332 and 28 U.S.C. § 1441.**

7.    The acts that form the basis of these causes of action alleged herein occurred in Polk County, Iowa.

**ANSWER:  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations of Paragraph 7 and, on that basis, deny such allegations.**

8.    The Terms of Use applicable to this dispute provide:

> The exclusive jurisdiction and venue for proceedings involving any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website (including all commercial transactions conducted through the Website) ("Claims") shall be the courts of competent jurisdiction sitting within Des Moines, Iowa (the "Forum").

**ANSWER:  Defendants admit that the quoted language in Paragraph 8 is a partial excerpt from DraftKings' Terms of Use, which speaks for itself. Except as expressly admitted, Defendants deny each and every allegation in Paragraph 8.**

## FACTS

9.    DraftKings owns and operates a sports gambling website at URL www.draftkings.com. The site is accessible via a web browser and a mobile version of the site is accessible via mobile web browser or via DraftKings mobile applications installed on smartphones.

**ANSWER:  Defendants admit that DraftKings operates an online sportsbook that is accessible via web browser and mobile application.  Except as expressly admitted, Defendants deny each and every allegation in Paragraph 9.**

10.     According to the Iowa Racing and Gaming Commission, in 2023 alone, DraftKings took over $838 million in bets from Iowa bettors and kept almost $70 million in revenue for itself. https://irgc.iowa.gov/media/318/download?inline=

**ANSWER:  Defendants deny each and every allegation in Paragraph 10.**

11.     Internet sports gambling is easy and convenient, and DraftKings offers bettors a myriad of possible wagers in professional and college sporting events in both the real world and in "fantasy" sports.

**ANSWER:  Defendants deny each and every allegation in Paragraph 11.**

12.     The convenience and ease of placing a sports bet online masks a dizzying array of interlocking sets of rules that may or may not govern each bet depending on the type of wager placed, the specific event, and the particular sport on which the wager is placed.

**ANSWER:  Defendants deny each and every allegation in Paragraph 12.**

13.     DraftKings is the drafter of these rules and bettors have no opportunity to negotiate these rules with DraftKings.

**ANSWER:  Defendants deny each and every allegation in Paragraph 13.**

14.     These rules can and do lead bettors to sometimes place bets erroneously, or without full comprehension of the rules. Unforeseen events can also occur in any athletic contest, resulting in changes to the odds that bettors may not have anticipated when they placed their bets.

**ANSWER:  Defendants deny each and every allegation in Paragraph 14.**

15.     Unsurprisingly, DraftKings makes no allowance for such errors or unforeseen events. Once a bet is accepted by DraftKings, the money is theirs, subject to the obligation to pay out on a winning bet.

**ANSWER:  Defendants deny each and every allegation in Paragraph 15.**

16.     However, when DraftKings makes an error or accepts a bet it should not have, or when unforeseen events occur that require an unanticipated large pay out by DraftKings, then it seems different rules apply.

**ANSWER:  Defendants deny each and every allegation in Paragraph 16.**

I.      **The 2024 AT&T Pebble Beach Pro-Am**

17.     The 2024 AT&T Pebble Beach Pro-Am (the "Tournament") took place in Pebble Beach, California on February 1-3, 2024.

**ANSWER:  Defendants admit the allegations in Paragraph 17.**

18.     Play was concluded after 54 holes and three complete rounds due to inclement weather.

**ANSWER:  Defendants admit the allegations in Paragraph 18.**

19.     Despite the threat of inclement weather, DraftKings was still accepting bets on the Tournament from Iowa bettors as late as February 4, 2024, at 12:01 AM CST.

**ANSWER:  Defendants admit it accepted wagers "on the Tournament from Iowa bettors as late as February 4, 2024, at 12:01 AM CST."  Except as expressly admitted herein, Defendants deny each and every allegation in Paragraph 19.**

II.     **The DraftKings Rules**

20.     As of February 3, 2024, as relevant to this dispute, the following "Rules" were hosted on the DraftKings https://sportsbook.draftkings.com/ website and accessible through the

DraftKings mobile application by registered Iowa DraftKings users/bettors: (i) The DraftKings "Terms of Use" (the "Terms"); (ii) the DraftKings "General Rules" (the "General Rules"); (iii) the DraftKings "Market Rules" (the "Market Rules"); and the (iv) DraftKings "Sport Rules" for "Golf" (the "Golf Rules").

**ANSWER:  Defendants admit that its Terms of Use, the General Rules, the Market Rules, and the Golf Rules were applicable to the wagers at issue in this lawsuit.  Except as expressly admitted, Defendants deny each and every allegation in Paragraph 20.**

21.     The Terms provided as follows:

**WINNINGS/PRIZES**

Subject to the Company (defined as "DraftKings") verifying your compliance with the Terms, Rules and other conditions of participation, at the conclusion of each Game, the Company shall use commercially reasonable efforts to award the winnings/prizes within a reasonable amount of time.

**ANSWER:  Defendants admit that the quoted language in Paragraph 21 is a partial excerpt from DraftKings' Terms of Use, which speaks for itself. Except as expressly admitted, Defendants deny each and every allegation in Paragraph 21.**

III.     **DraftKings Accepts Bets by Bavas on the Tournament**

22.     On February 3, 2024, at 10:04 PM CST, Bavas placed a $100.00 bet via the DraftKings mobile application on the Tournament, which DraftKings accepted under Ticket #DK638426162431822333 ("Bet #1").

**ANSWER:  Defendants deny that "Ticket #DK638426162431822333" alleged is accurate.  Except as expressly denied, Defendants admit the allegations in Paragraph 22.**

23.     Bet #1 was a "Parlay." As provided in the Market Rules, a "Parlay" is:

a bet where the customer chooses two (2) or more selections and requires every selection to be correct in order for the Parlay to win. In the event a Parlay contains a selection which is settled as void or push, then the individual selection will be

excluded from the Parlay, and the odds of the Parlay will be recalculated to reflect the remaining selections in the Parlay.

**ANSWER: Defendants admit that the quoted language in Paragraph 23 is a partial excerpt from DraftKings' Market Rules, which speaks for itself. Except as expressly admitted, Defendants deny each and every allegation in Paragraph 23.**

24.    Bet #1 was specifically a "20 Picks" Parlay in which Bavas was picking multiple Tournament finishers in multiple specific leading positions at the conclusion of the Tournament.

**ANSWER: Defendants admit the allegations in Paragraph 24.**

25.    Bavas's picks on Bet #1 were:

a.    One (1) pick for the Tournament winner, whom Bavas picked to be golfer Wyndham Clark;

b.    Four (4) picks for the golfers who would place among the top five Tournament finishers, whom Bavas picked to be Ludvig Aberg, Mark Hubbard, Matthieu Pavon, and Thomas Detry;

c.    Five (5) picks for the golfers who would place among the top 10 Tournament finishers, whom Bavas picked to be Jason Day, Justin Thomas, Sam Burns, Scottie Scheffler, and Tom Hoge;

d.    Ten (10) picks for the golfers who would place among the top 20 Tournament finishers, whom Bavas picked to be Beau Hossler, Collin Morikawa, Emiliano Grillo, Eric Cole, Erik Van Rooyen, Justin Rose, Keegan Bradley, Patrick Cantlay, Peter Malnati, and Si Woo Kim.

**ANSWER: Defendants admit the allegations in Paragraph 25.**

26.    At the time DraftKings accepted Bet #1, DraftKings promised to pay Bavas $4,651,571.26 if every one of Bavas's picks were correct.



**ANSWER:  Defendants deny each and every allegation in Paragraph 26.**

27.    On February 3, 2024, at 11:22 PM CST, Bavas placed a $50.00 bet via the DraftKings mobile application on the Tournament, which DraftKings accepted under Ticket #DK638426209743564733 ("Bet #2").

**ANSWER:  Defendants deny that "Ticket #DK638426209743564733" alleged is accurate.  Except as expressly denied, Defendants admit the allegations in Paragraph 27.**

28.    Apart from the time of day and the amount of the bet, Bet #2 was identical to Bet #1.

**ANSWER:  Defendants deny each and every allegation in Paragraph 28.**

29.    At the time DraftKings accepted Bet #2, DraftKings promised to pay Bavas $2,325785.63 if every one of Bavas's picks were correct.

**ANSWER:  Defendants deny each and every allegation in Paragraph 29.**

30.     On February 3, 2024, at 11:59 PM CST, Bavas placed a $100.00 bet via the DraftKings mobile application on the Tournament, which DraftKings accepted under Ticket #DK638426231939772047 ("Bet #3").

**ANSWER:  Defendants deny that "Ticket #DK638426231939772047" alleged is accurate.  Except as expressly denied, Defendants admit the allegations in Paragraph 30.**

31.     Apart from the time of day, Bet #3 was identical to Bet #1.

**ANSWER:  Defendants deny each and every allegation in Paragraph 31.**

32.     At the time DraftKings accepted Bet #3, DraftKings promised to pay Bavas $4,651,571.26 if every one of Bavas's picks were correct.



**ANSWER:  Defendants deny each and every allegation in Paragraph 32.**

33.     On February 4, 2024, at 12:01 AM CST, Bavas placed a $50.00 bet via the DraftKings mobile application on the Tournament, which DraftKings accepted under Ticket #DK638426233063912571 ("Bet #4").

**ANSWER:  Defendants deny that "Ticket #DK638426233063912571" alleged is accurate.  Except as expressly denied, Defendants admit the allegations in Paragraph 33.**

34.     Apart from the date and time, Bet #4 was identical to Bet #2.

**ANSWER:  Defendants deny each and every allegation in Paragraph 34.**

35.     At the time DraftKings accepted Bet #4, DraftKings promised to pay Bavas $2,325785.63 if every one of Bavas's picks were correct.



**ANSWER:  Defendants deny each and every allegation in Paragraph 35.**

36.    On February 3, 2024, at 10:18 PM CST, Bavas placed a $25.00 bet via the DraftKings mobile application on the Tournament, which DraftKings accepted under Ticket # #DK638426170887420385 ("Bet #5").

**ANSWER:  Defendants deny that "Ticket #DK638426170887420385" alleged is accurate.  Except as expressly denied, Defendants admit the allegations in Paragraph 36.**

37.    Bet #5 was a different type of Parlay. Bet #5 was specifically a "20 Pick" Parlay in which Bavas was simply picking 20 golfers to be the top 20 finishers in the Tournament in no particular order.

**ANSWER:  Defendants deny each and every allegation in Paragraph 37.**

38.    Bavas picked golfers Adam Scott, Beau Hossler, Cam Davis, Christiaan Bezuidenhout, Collin Morikawa, Emiliano Grillo, Eric Cole, Erik Van Rooyen, J.T. Poston, Jason Day, Justin Rose, Keegan Bradley, Mark Hubbard, Patrick Cantlay, Peter Malnati, Sahith Theegala, Sam Burns, Si Woo Kim, Thomas Detry, and Tom Hoge to be the top 20 finishers in the Tournament.

**ANSWER:  Defendants admit the allegations in Paragraph 38.**

39.    At the time DraftKings accepted Bet #5, DraftKings promised to pay Bavas $250,067.99 if every one of Bavas's picks were correct.

**ANSWER:  Defendants deny each and every allegation in Paragraph 39.**

**IV.    PGA Tour Referees Delay, Suspend and Then Declare the Tournament Completed**

40.    On February 4, 2024, PGA Tour referees continually delayed the start of the final round of the Tournament due to Monterey County, California experiencing historic rain and wind and continued to delay the final round of the Tournament throughout the day.

**ANSWER:  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations of Paragraph 40 and, on that basis, deny such allegations.**

41.    At 9:15 PM EST, the PGA Tour Rules Committees announced there would be no play on February 5, 2024, and "[t]herefore, in accordance with the PGA TOUR Regulations the tournament results will be final through the conclusion of 54 holes."

**ANSWER:  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations of Paragraph 41 and, on that basis, denies such allegations.**

42.    The leaderboard of the top 20 golfers at the conclusion of play in the Tournament is not in dispute:



**All Players**

FEDEXCUP

| POS | ↑↓ | | PLAYER | | TOTAL | THRU | ROUND | R1 | R2 | R3 | STROKES | PROJ. | STARTING | ↑↓ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | ↑22 | ☆ | Wyndham Clark (PB) | Titleist | -17 | F | -12 | 72 | 67 | 60 | 199 | 3 | 61 | ↑58 |
| 2 | ↓1 | ☆ | Ludvig Aberg (PB) | Titleist | -16 | F | -5 | 68 | 65 | 67 | 200 | 6 | 41 | ↑35 |
| 3 | ↑2 | ☆ | Matthieu Pavon (PB) | Titleist | -15 | F | -6 | 65 | 70 | 66 | 201 | 1 | 2 | ↑1 |
| T4 | ↑6 | ☆ | Mark Hubbard (PB) | Titleist | -14 | F | -7 | 69 | 68 | 65 | 202 | 17 | 66 | ↑49 |
| T4 | ↓3 | ☆ | Thomas Detry (PB) | | -14 | F | -3 | 63 | 70 | 69 | 202 | 18 | T84 | ↑66 |
| T6 | ↑28 | ☆ | Jason Day (PB) | | -13 | F | -9 | 69 | 71 | 63 | 203 | 10 | 22 | ↑12 |
| T6 | ↑4 | ☆ | Tom Hoge (PB) | Titleist | -13 | F | -6 | 71 | 66 | 66 | 203 | 22 | 55 | ↑33 |
| T6 | ↓1 | ☆ | Justin Thomas (PB) | Titleist | -13 | F | -4 | 68 | 67 | 68 | 203 | 14 | T29 | ↑15 |
| T6 | ↓5 | ☆ | Scottie Scheffler (PB) | | -13 | F | -2 | 69 | 64 | 70 | 203 | 5 | 11 | ↑6 |
| 10 | - | ☆ | Sam Burns (PB) | | -12 | F | -5 | 68 | 69 | 67 | 204 | 24 | 37 | ↑13 |
| T11 | ↑12 | ☆ | Justin Rose (PB) | | -11 | F | -6 | 68 | 71 | 66 | 205 | 37 | T101 | ↑64 |
| T11 | ↓3 | ☆ | Keegan Bradley (PB) | | -11 | F | -3 | 70 | 66 | 69 | 205 | 11 | 14 | ↑3 |
| T11 | ↓7 | ☆ | Patrick Cantlay (PB) | Titleist | -11 | F | -1 | 64 | 70 | 71 | 205 | 21 | 26 | ↑5 |
| T14 | ↑9 | ☆ | Eric Cole (PB) | Titleist | -10 | F | -5 | 68 | 71 | 67 | 206 | 20 | 19 | ↓1 |
| T14 | ↓4 | ☆ | Si Woo Kim (PB) | | -10 | F | -3 | 66 | 71 | 69 | 206 | 28 | 42 | ↑14 |
| T14 | ↓4 | ☆ | Peter Malnati (PB) | Titleist | -10 | F | -3 | 69 | 68 | 69 | 206 | 51 | - | - |
| T14 | ↓4 | ☆ | Collin Morikawa (PB) | | -10 | F | -3 | 67 | 70 | 69 | 206 | 16 | 15 | ↓1 |
| T14 | ↓6 | ☆ | Beau Hossler (PB) | Titleist | -10 | F | -2 | 69 | 67 | 70 | 206 | 32 | 44 | ↑12 |
| T14 | ↓9 | ☆ | Emiliano Grillo (PB) | | -10 | F | -1 | 66 | 69 | 71 | 206 | 26 | 31 | ↑5 |
| T20 | ↑3 | ☆ | Adam Scott (PB) | Titleist | -9 | F | -4 | 72 | 67 | 68 | 207 | 63 | - | - |
| T20 | ↑3 | ☆ | Christiaan Bezuidenho... (PB) | Titleist | -9 | F | -4 | 69 | 70 | 68 | 207 | 13 | T9 | ↓4 |
| T20 | ↑3 | ☆ | Erik van Rooyen (PB) | | -9 | F | -4 | 69 | 70 | 68 | 207 | 34 | 36 | ↑2 |
| T20 | ↑3 | ☆ | Cam Davis (PB) | Titleist | -9 | F | -4 | 70 | 69 | 68 | 207 | 49 | 98 | ↑49 |
| T20 | ↓10 | ☆ | Sahith Theegala (PB) | Titleist | -9 | F | -2 | 70 | 67 | 70 | 207 | 9 | 6 | ↓3 |
| T20 | ↓2 | ☆ | J.T. Poston (PB) | Titleist | -9 | F | -3 | 70 | 68 | 69 | 207 | 8 | 5 | ↓3 |

**ANSWER:  Defendants admit the allegations in Paragraph 42.**

43.    All of Bavas's Bets 1-5 were therefore winners.

**ANSWER:  Defendants deny each and every allegation in Paragraph 43.**

**V.    DraftKings Voids Bavas's Bets 1-5.**

44.    On February 5, 2024, DraftKings unilaterally voided Bets 1, 2, 3, 4, and 5 and refunded the amounts wagered.

**ANSWER:  Defendants admit that DraftKings voided Bets 1, 2, 3, 4, and 5 and refunded the amounts wagered.  Except as expressly admitted herein, Defendants deny each and every allegation in Paragraph 44.**

45.    DraftKings cited its "Tournament Futures Winner" rule from its "Specific Market Rules" of its Golf Rules as its reason for voiding the bets. As of February 4, 2024, the rule was as follows:

> **Tournament Futures Winner** - All futures bets are settled on the player/team winning the trophy. The result of playoffs is taken into account. All bets stand except for those placed on participants not competing in the first round. In the event that there is a change to or decrease in the booked number of rounds or openings played in the competition, wagers set on this market will stand if 36 holes of the tournament have been completed. If less than 36 holes have been completed, or futures bets were placed after the last shot of the previous completed round, bets will be void. [Golf Rules]

**ANSWER:  Defendants admit that the quoted language in Paragraph 45 is a partial excerpt from DraftKings' Golf Rules, which speaks for itself. Except as expressly admitted, Defendants deny each and every allegation in Paragraph 45.**

46.    However, there is no mention in the "Tournament Futures Winner" rule of multiple players or multiple finishing positions in the same tournament, as in Bavas's Parlay bets. The rule speaks only of "Tournament Futures Winner" (*i.e.* "Winner" singular) and the "player/team winning the trophy."

**ANSWER:  Defendants deny each and every allegation in Paragraph 46.**

47.    Indeed, there is no indication in any the DraftKings rules that "Tournament Futures *Winner*" refers to golf tournament Parlay bets, such as those placed by Bavas, on *multiple players* finishing in a particular order in the same tournament, *in addition to the tournament winner*.

**ANSWER:  Defendants deny each and every allegation in Paragraph 47.**

48.     Had Bavas wanted to place a bet on only the single individual "player" who would "win the trophy" and become the "Tournament Winner," he would have done so.

**ANSWER:  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations of Paragraph 48 and, on that basis, denies such allegations.**

49.     Instead, DraftKings has separate rules, including those also in the "Specific Market Rules" of its Golf Rules, that apply to Parlays, including, but not limited to:

> **Top Specified Finish** - A Player to finish within the Top 4, Top 5, Top 6, Top 10 or Top 20 of a specific tournament. Dead Heat rules apply. Bets stand once the player has teed off the first hole. [Golf Rules].

**ANSWER:  Defendants admit that the quoted language in Paragraph 49 is a partial excerpt from DraftKings' Golf Rules, which speaks for itself. Except as expressly admitted, Defendants deny each and every allegation in Paragraph 49.**

50.     Further, the Parlay rule itself provides:

> [i]n the event a Parlay contains a selection which is settled as void or push, then the individual selection will be excluded from the Parlay, and the odds of the Parlay will be recalculated to reflect the remaining selections in the Parlay. [Market Rules]

**ANSWER:  Defendants admit that the quoted language in Paragraph 50 is a partial excerpt from DraftKings' Market Rules, which speaks for itself. Except as expressly admitted, Defendants deny each and every allegation in Paragraph 50.**

51.     The DraftKings rules for "Same Game Parlay" were also seemingly applicable to Bets 1-5 and the cancellation of the final round of the Tournament:

> A "Same Game Parlay" is a single bet combining multiple selections from the same event and is dependent on all of those selections winning, with the exception of some selections which are settled as void or push. Further details for the settlement rules for Same Game Parlays are set forth in the Sport Rules for the relevant sport. [Market Rules]

**ANSWER:  Defendants admit that the quoted language in Paragraph 51 is a partial excerpt from DraftKings' Market Rules, which speaks for itself. Except as expressly admitted, Defendants deny each and every allegation in Paragraph 51.**

52.     Whether considered separately or combined, the meaning of these rules is that, even if DraftKings could "void" the portions of Bets 1-4 that selected the "Tournament Futures Winner" "player" as Windham Clark, that "individual selection [should have been] excluded from the Parlay, and the odds of the Parlay [should have been] recalculated to reflect the remaining selections in the Parlay."

**ANSWER:  Defendants deny each and every allegation in Paragraph 52.**

53.     Significantly, Bet #5 did not even include Tournament winner Wyndham Clark as one of Bavas's chosen top 20 finishers, so the "Tournament Futures Winner" rule had no plausible application to that specific bet.

**ANSWER:  Defendants deny each and every allegation in Paragraph 53.**

54.     On February 20, 2024, DraftKings indicated that is decision to void Bets 1, 2, 3, 4, and 5 was final.

**ANSWER:  Defendants admit that DraftKings' decision to void Bets 1, 2, 3, 4, and 5 was final.  Except as expressly admitted, Defendants deny each and every allegation in Paragraph 54.**

## CLAIMS FOR RELIEF

### COUNT I

### (Breach of Contract on Bet #1)

55.     Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

56.     Bet #1 was a valid and enforceable written contract between Bavas and Defendants for which Bavas gave good and valuable consideration.

**ANSWER:  Defendants state that the allegations in Paragraph 56 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 56.**

57.     The terms and conditions of the Bet #1 Contract were the Terms; the General Rules; the Market Rules; and the Golf Rules posted on the DraftKings website and accessible through the DraftKings mobile application on February 3-4, 2024.

**ANSWER:  Defendants admit that the Terms, the General Rules, the Market Rules, and the Golf Rules were applicable to the wagers at issue.  Except as expressly admitted, Defendants deny each and every allegation in Paragraph 57.**

58.     Defendants were the drafters of the terms and conditions of the Bet #1 Contract, and the contract was adhesive as to Bavas.

**ANSWER:  Defendants state that the allegations in Paragraph 58 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 58.**

59.     Bavas fully performed under the Bet #1 Contract by depositing sufficient funds into his DraftKings account and placing a valid bet that was accepted by Defendants.

**ANSWER:  Defendants state that the allegations in Paragraph 59 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 59.**

60.    The Defendants, without legal excuse, breached the Bet #1 Contract by failing "to award the winnings/prizes" when the contracted for conditions occurred.

**ANSWER:  Defendants state that the allegations in Paragraph 60 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 60.**

61.    Bavas has suffered damages as a result of Defendants' breach in an amount to be determined at trial plus prejudgment interest.

**ANSWER:  Defendants state that the allegations in Paragraph 61 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 61.**

## COUNT II

**(Breach of the Implied Covenant of Good Faith and Fair Dealing on Bet #1)**

62.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

63.    Iowa law recognizes an implied covenant of good faith and fair dealing in all contracts.

**ANSWER:  Defendants state that the allegations in Paragraph 63 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 63.**

64.    The implied covenant prevents one party from using technical compliance with a contract as a shield from liability when that party is acting for a purpose contrary to that for which the contract was made.

**ANSWER:  Defendants state that the allegations in Paragraph 64 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 64.**

65.    Defendants were the drafter of the terms and conditions of the Bet #1 Contract, and the contract was adhesive as to Bavas.

**ANSWER:  Defendants state that the allegations in Paragraph 65 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 65.**

66.    Here, Defendants breached the implied covenant by using rules that were not applicable to the Bet #1 Contract, rather than other, more applicable rules, in an attempt to avoid their obligation under the Bet #1 Contract "to award the winnings/prizes."

**ANSWER:  Defendants state that the allegations in Paragraph 66 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 66.**

67.    Bavas has suffered damages as a result of Defendants' breach of the implied covenant in an amount to be determined at trial plus prejudgment interest.

**ANSWER:  Defendants state that the allegations in Paragraph 67 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 67.**

## COUNT III

### (Action under I.C.A. § 714H.5 for Violation of I.C.A. § 714H.3 on Bet #1)

68.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

69.    Bavas is a "consumer" within the meaning of I.C.A. § 714H.2(3) and an online sports bet is "merchandise" within the meaning of I.C.A. § 714.16(e), made applicable to this proceeding by I.C.A. § 714H.2(6).

**ANSWER:  Defendants state that the allegations in Paragraph 69 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 69.**

70.    Defendants have engaged in prohibited practices and acts under I.C.A. § 714H.3 including acts and practices that were likely to mislead Bavas as to the material facts with regard to Bet #1 by failing to honor a bet accepted by Defendants according to the represented terms on the DraftKings website and accessible from the DraftKings mobile application.

**ANSWER:  Defendants state that the allegations in Paragraph 70 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 70.**

71.    Defendants advertised sports betting throughout Iowa by television, radio, digital advertising and print.

**ANSWER:  Defendants deny the allegations in Paragraph 71.**

72.    Defendants engaged in unfair practices and disseminated false, misleading and deceptive information in one or more of the following ways:

a.    Representing to consumers that winning bets accepted by Defendants would be honored, and Defendants would "award the winnings/prizes";

b.      Concealing or failing to disclose that Defendants would attempt to avoid paying winning bets;

c.      Engaging in the unfair practice of promising to pay winning bets when Defendants knew, or should have known, that they would not honor that promise;

d.      Asserting Defendants would conduct themselves in accordance with the terms, conditions and rules on the DraftKings website and accessible via the DraftKings mobile application when they would not;

e.      Otherwise failing to honor their promises and representations that they would pay valid, winning bets, regardless of subsequent events.

**ANSWER:  Defendants state that the allegations in Paragraph 72 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 72.**

73.     Bavas has suffered an ascertainable loss of money or property as a result of Defendants' prohibited practices and acts in violation of I.C.A. § 714H with regard to Bet #1.

**ANSWER:  Defendants state that the allegations in Paragraph 73 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 73.**

74.     Bavas is entitled to recover actual damages as a result of Defendants' violation of I.C.A. § 714H with regard to Bet #1, as provided in I.C.A. § 714H.5(1).

**ANSWER:  Defendants state that the allegations in Paragraph 74 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 74.**

75.    Bavas is entitled to reasonable attorneys' fees as a result of Defendants' violation of I.C.A. § 714H with regard to Bet #1, as provided in I.C.A. § 714H.5(2).

**ANSWER:  Defendants state that the allegations in Paragraph 75 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 75.**

76.    Defendants' violation of I.C.A. § 714H with regard to Bet #1 was in willful and wanton disregard for the rights of Bavas, entitling Bavas to statutory damages of up to three times the amount of actual damages, as provided in I.C.A. § 714H.5(4).

**ANSWER:  Defendants state that the allegations in Paragraph 76 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 76.**

77.    Pursuant to I.C.A. § 714H.6, Bavas is providing a copy of this Petition to the Iowa Attorney General.

**ANSWER:  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations of Paragraph 77 and, on that basis, deny such allegations.**

**COUNT IV**

**(Breach of Contract on Bet #2)**

78.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

79.    Bet #2 was a valid and enforceable written contract between Bavas and Defendants for which Bavas gave good and valuable consideration.

**ANSWER:  Defendants state that the allegations in Paragraph 79 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 79.**

80.    The terms and conditions of the Bet #2 Contract were the Terms; the General Rules; the Market Rules; and the Golf Rules posted on the DraftKings website and accessible through the DraftKings mobile application on February 3-4, 2024.

**ANSWER:  Defendants admit that the Terms, the General Rules, the Market Rules, and the Golf Rules were applicable to the wagers at issue.  Except as expressly admitted, Defendants deny each and every allegation in Paragraph 80.**

81.    Defendants were the drafters of the terms and conditions of the Bet #2 Contract, and the contract was adhesive as to Bavas.

**ANSWER:  Defendants state that the allegations in Paragraph 81 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 81.**

82.    Bavas fully performed under the Bet #2 Contract by depositing sufficient funds into his DraftKings account and placing a valid bet that was accepted by Defendants.

**ANSWER:  Defendants state that the allegations in Paragraph 82 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 82.**

83.    The Defendants, without legal excuse, breached the Bet #2 Contract by failing "to award the winnings/prizes" when the contracted for conditions occurred.

**ANSWER: Defendants state that the allegations in Paragraph 83 consist entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendants deny each and every allegation in Paragraph 83.**

84. Bavas has suffered damages as a result of Defendants' breach in an amount to be determined at trial plus prejudgment interest.

**ANSWER: Defendants state that the allegations in Paragraph 84 consist entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendants deny each and every allegation in Paragraph 84.**

## COUNT V

### (Breach of the Implied Covenant of Good Faith and Fair Dealing on Bet #2)

85. Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER: Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

86. Iowa law recognizes an implied covenant of good faith and fair dealing in all contracts.

**ANSWER: Defendants state that the allegations in Paragraph 86 consist entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendants deny each and every allegation in Paragraph 86.**

87. The implied covenant prevents one party from using technical compliance with a contract as a shield from liability when that party is acting for a purpose contrary to that for which the contract was made.

**ANSWER:  Defendants state that the allegations in Paragraph 87 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 87.**

88.    Defendants were the drafters of the terms and conditions of the Bet #2 Contract, and the contract was adhesive as to Bavas.

**ANSWER:  Defendants state that the allegations in Paragraph 88 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 88.**

89.    Here, Defendants breached the implied covenant by using rules that were not applicable to the Bet #2 Contract, rather than other, more applicable rules, in an attempt to avoid their obligation under the Bet #2 Contract "to award the winnings/prizes."

**ANSWER:  Defendants state that the allegations in Paragraph 89 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 89.**

90.    Bavas has suffered damages as a result of Defendants' breach of the implied covenant in an amount to be determined at trial plus prejudgment interest.

**ANSWER:  Defendants state that the allegations in Paragraph 90 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 90.**

**COUNT VI**

**(Action Under I.C.A. § 714H.5 for Violation of I.C.A. § 714H.3 on Bet #2)**

91.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

92.     Bavas is a "consumer" within the meaning of I.C.A. § 714H.2(3) and an online sports bet is "merchandise" within the meaning of I.C.A. § 714.16(e), made applicable to this proceeding by I.C.A. § 714H.2(6).

**ANSWER:  Defendants state that the allegations in Paragraph 92 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 92.**

93.     Defendants have engaged in prohibited practices and acts under I.C.A. § 714H.3 including acts and practices that were likely to mislead Bavas as to the material facts with regard to Bet #2 by failing to honor a bet accepted by DraftKings according to the represented terms on the DraftKings website and accessible with the DraftKings mobile application.

**ANSWER:  Defendants state that the allegations in Paragraph 93 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 93.**

94.     Defendants advertised sports betting throughout Iowa by television, radio, digital advertising and print.

**ANSWER:  Defendants deny the allegations in Paragraph 94.**

95.     Defendants engaged in unfair practices and disseminated false, misleading and deceptive information in one or more of the following ways:

        a.     Representing to consumers that winning bets accepted by Defendants would be honored, and Defendants would "award the winnings/prizes";

b.  Concealing or failing to disclose that Defendants would attempt to avoid paying winning bets;

c.  Engaging in the unfair practice of promising to pay winning bets when Defendants knew, or should have known, that they would not honor that promise;

d.  Asserting Defendants would conduct themselves in accordance with the terms, conditions and rules on the DraftKings website and accessible via the DraftKings mobile application when they would not;

e.  Otherwise failing to honor their promises and representations that they would pay valid, winning bets, regardless of subsequent events.

**ANSWER:  Defendants state that the allegations in Paragraph 95 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 95.**

96.  Bavas has suffered an ascertainable loss of money or property as a result of Defendants' prohibited practices and acts in violation of I.C.A. § 714H with regard to Bet #2.

**ANSWER:  Defendants state that the allegations in Paragraph 96 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 96.**

97.  Bavas is entitled to recover actual damages as a result of Defendants' violation of I.C.A. § 714H with regard to Bet #2, as provided in I.C.A. § 714H.5(1).

**ANSWER:  Defendants state that the allegations in Paragraph 97 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 97.**

98.     Bavas is entitled to reasonable attorneys' fees as a result of Defendants' violation of I.C.A. § 714H with regard to Bet #2, as provided in I.C.A. § 714H.5(2).

**ANSWER:  Defendants state that the allegations in Paragraph 98 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 98.**

99.     Defendants' violation of I.C.A. § 714H with regard to Bet #2 was in willful and wanton disregard for the rights of Bavas, entitling Bavas to statutory damages of up to three times the amount of actual damages, as provided in I.C.A. § 714H.5(4).

**ANSWER:  Defendants state that the allegations in Paragraph 99 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 99.**

100.     Pursuant to I.C.A. § 714H.6, Bavas is providing a copy of this Petition to the Iowa Attorney General.

**ANSWER:  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations of Paragraph 100 and, on that basis, denies such allegations.**

**COUNT VII**

**(Breach of Contract on Bet #3)**

101.     Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

102.     Bet #3 was a valid and enforceable written contract between Bavas and Defendants for which Bavas gave good and valuable consideration.

**ANSWER:  Defendants state that the allegations in Paragraph 102 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 102.**

103.    The terms and conditions of the Bet #3 Contract were the Terms; the General Rules; the Market Rules; and the Golf Rules posted on the DraftKings website and accessible through the DraftKings mobile application on February 3-4, 2024.

**ANSWER:  Defendants admit that the Terms, the General Rules, the Market Rules, and the Golf Rules were applicable to the wagers at issue.  Except as expressly admitted, Defendants deny each and every allegation in Paragraph 103.**

104.    Defendants were the drafters of the terms and conditions of the Bet #3 Contract, and the contract was adhesive as to Bavas.

**ANSWER:  Defendants state that the allegations in Paragraph 104 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 104.**

105.    Bavas fully performed under the Bet #3 Contract by depositing sufficient funds into his DraftKings account and placing a valid bet that was accepted by Defendants.

**ANSWER:  Defendants state that the allegations in Paragraph 105 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 105.**

106.    The Defendants, without legal excuse, breached the Bet #3 Contract by failing "to award the winnings/prizes" when the contracted for conditions occurred.

**ANSWER:  Defendants state that the allegations in Paragraph 106 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 106.**

107.    Bavas has suffered damages as a result of Defendants' breach in an amount to be determined at trial plus prejudgment interest.

**ANSWER:  Defendants state that the allegations in Paragraph 107 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 107.**

## COUNT VIII

### (Breach of the Implied Covenant of Good Faith and Fair Dealing on Bet #3)

108.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

109.    Iowa law recognizes an implied covenant of good faith and fair dealing in all contracts.

**ANSWER:  Defendants state that the allegations in Paragraph 109 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 109.**

110.    The implied covenant prevents one party from using technical compliance with a contract as a shield from liability when that party is acting for a purpose contrary to that for which the contract was made.

**ANSWER:  Defendants state that the allegations in Paragraph 110 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 110.**

111.    Defendants were the drafters of the terms and conditions of the Bet #3 Contract, and the contract was adhesive as to Bavas.

**ANSWER:  Defendants state that the allegations in Paragraph 111 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 111.**

112.    Here, Defendants breached the implied covenant by using rules that were not applicable to the Bet #3 Contract, rather than other, more applicable rules, in an attempt to avoid their obligation under the Bet #3 Contract "to award the winnings/prizes."

**ANSWER:  Defendants state that the allegations in Paragraph 112 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 112.**

113.    Bavas has suffered damages as a result of Defendants' breach of the implied covenant in an amount to be determined at trial plus prejudgment interest.

**ANSWER:  Defendants state that the allegations in Paragraph 113 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 113.**

## COUNT IX

### (Action Under I.C.A. § 714H.5 for Violation of I.C.A. § 714H.3 on Bet #3)

114.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

115.     Bavas is a "consumer" within the meaning of I.C.A. § 714H.2(3) and an online sports bet is "merchandise" within the meaning of I.C.A. § 714.16(e), made applicable to this proceeding by I.C.A. § 714H.2(6).

**ANSWER:  Defendants state that the allegations in Paragraph 115 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 115.**

116.     Defendants have engaged in prohibited practices and acts under I.C.A. § 714H.3 including acts and practices that were likely to mislead Bavas as to the material facts with regard to Bet #3 by failing to honor a bet accepted by Defendants according to the represented terms on the DraftKings website and accessible with the DraftKings mobile application.

**ANSWER:  Defendants state that the allegations in Paragraph 116 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 116.**

117.     Defendants advertised sports betting throughout Iowa by television, radio, digital advertising and print.

**ANSWER:  Defendants deny the allegations in Paragraph 117.**

118.     Defendants engaged in unfair practices and disseminated false, misleading and deceptive information in one or more of the following ways:

a.     Representing to consumers that winning bets accepted by Defendants would be honored, and Defendants would "award the winnings/prizes";

b.      Concealing or failing to disclose that Defendants would attempt to avoid paying winning bets;

c.      Engaging in the unfair practice of promising to pay winning bets when Defendants knew, or should have known, that they would not honor that promise;

d.      Asserting Defendants would conduct themselves in accordance with the terms, conditions and rules on the DraftKings website and accessible via the DraftKings mobile application when they would not;

e.      Otherwise failing to honor their promises and representations that they would pay valid, winning bets, regardless of subsequent events.

**ANSWER:  Defendants state that the allegations in Paragraph 118 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 118.**

119.    Bavas has suffered an ascertainable loss of money or property as a result of Defendants' prohibited practices and acts in violation of I.C.A. § 714H with regard to Bet #3.

**ANSWER:  Defendants state that the allegations in Paragraph 119 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 119.**

120.    Bavas is entitled to recover actual damages as a result of Defendants' violation of I.C.A. § 714H with regard to Bet #3, as provided in I.C.A. § 714H.5(1).

**ANSWER:  Defendants state that the allegations in Paragraph 120 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 120.**

121.    Bavas is entitled to reasonable attorneys' fees as a result of Defendants' violation of I.C.A. § 714H with regard to Bet #3, as provided in I.C.A. § 714H.5(2).

**ANSWER:  Defendants state that the allegations in Paragraph 121 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 121.**

122.    Defendants' violation of I.C.A. § 714H with regard to Bet #3 was in willful and wanton disregard for the rights of Bavas, entitling Bavas to statutory damages of up to three times the amount of actual damages, as provided in I.C.A. § 714H.5(4).

**ANSWER:  Defendants state that the allegations in Paragraph 122 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 122.**

123.    Pursuant to I.C.A. § 714H.6, Bavas is providing a copy of this Petition to the Iowa Attorney General.

**ANSWER:  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations of Paragraph 123 and, on that basis, denies such allegations.**

**COUNT X**

**(Breach of Contract on Bet #4)**

124.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

125.    Bet #4 was a valid and enforceable written contract between Bavas and Defendants for which Bavas gave good and valuable consideration.

**ANSWER:  Defendants state that the allegations in Paragraph 125 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 125.**

126.    The terms and conditions of the Bet #4 Contract were the Terms; the General Rules; the Market Rules; and the Golf Rules posted on the DraftKings website and accessible through the DraftKings mobile application on February 3-4, 2024.

**ANSWER:  Defendants admit that the Terms, the General Rules, the Market Rules, and the Golf Rules were applicable to the wagers at issue.  Except as expressly admitted, Defendants deny each and every allegation in Paragraph 126.**

127.    Defendants were the drafters of the terms and conditions of the Bet #4 Contract, and the contract was adhesive as to Bavas.

**ANSWER:  Defendants state that the allegations in Paragraph 127 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 127.**

128.    Bavas fully performed under the Bet #4 Contract by depositing sufficient funds into his DraftKings account and placing a valid bet that was accepted by Defendants.

**ANSWER:  Defendants state that the allegations in Paragraph 128 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 128.**

129.    The Defendants, without legal excuse, breached the Bet #4 Contract by failing "to award the winnings/prizes" when the contracted for conditions occurred.

**ANSWER:  Defendants state that the allegations in Paragraph 129 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 129.**

130.    Bavas has suffered damages as a result of Defendants' breach in an amount to be determined at trial plus prejudgment interest.

**ANSWER:  Defendants state that the allegations in Paragraph 130 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 130.**

### COUNT XI

**(Breach of the Implied Covenant of Good Faith and Fair Dealing on Bet #4)**

131.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

132.    Iowa law recognizes an implied covenant of good faith and fair dealing in all contracts.

**ANSWER:  Defendants state that the allegations in Paragraph 132 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 132.**

133.    The implied covenant prevents one party from using technical compliance with a contract as a shield from liability when that party is acting for a purpose contrary to that for which the contract was made.

**ANSWER:  Defendants state that the allegations in Paragraph 133 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 133.**

134.    Defendants were the drafters of the terms and conditions of the Bet #4 Contract, and the contract was adhesive as to Bavas.

**ANSWER:  Defendants state that the allegations in Paragraph 134 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 134.**

135.    Here, Defendants breached the implied covenant by using rules that were not applicable to the Bet #4 Contract, rather than other, more applicable rules, in an attempt to avoid their obligation under the Bet #4 Contract "to award the winnings/prizes."

**ANSWER:  Defendants state that the allegations in Paragraph 135 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 135.**

136.    Bavas has suffered damages as a result of Defendants' breach of the implied covenant in an amount to be determined at trial plus prejudgment interest.

**ANSWER:  Defendants state that the allegations in Paragraph 136 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 136.**

## COUNT XII

### (Action Under I.C.A. § 714H.5 for Violation of I.C.A. § 714H.3 on Bet #4)

137.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

138.     Bavas is a "consumer" within the meaning of I.C.A. § 714H.2(3) and an online sports bet is "merchandise" within the meaning of I.C.A. § 714.16(e), made applicable to this proceeding by I.C.A. § 714H.2(6).

**ANSWER:  Defendants state that the allegations in Paragraph 138 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 138.**

139.     Defendants have engaged in prohibited practices and acts under I.C.A. § 714H.3 including acts and practices that were likely to mislead Bavas as to the material facts with regard to Bet #4 by failing to honor a bet accepted by DraftKings according to the represented terms on the DraftKings website and accessible with the DraftKings mobile application.

**ANSWER:  Defendants state that the allegations in Paragraph 139 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 139.**

140.     Defendants advertised sports betting throughout Iowa by television, radio, digital advertising and print.

**ANSWER:  Defendants deny the allegations in Paragraph 140.**

141.     Defendants engaged in unfair practices and disseminated false, misleading and deceptive information in one or more of the following ways:

        a.      Representing to consumers that winning bets accepted by Defendants would be honored, and Defendants would "award the winnings/prizes";

b.      Concealing or failing to disclose that Defendants would attempt to avoid paying winning bets;

c.      Engaging in the unfair practice of promising to pay winning bets when Defendants knew, or should have known, that they would not honor that promise;

d.      Asserting Defendants would conduct themselves in accordance with the terms, conditions and rules on the DraftKings website and accessible via the DraftKings mobile application when they would not;

e.      Otherwise failing to honor their promises and representations that they would pay valid, winning bets, regardless of subsequent events.

**ANSWER:  Defendants state that the allegations in Paragraph 141 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 141.**

142.    Bavas has suffered an ascertainable loss of money or property as a result of Defendants' prohibited practices and acts in violation of I.C.A. § 714H with regard to Bet #4.

**ANSWER:  Defendants state that the allegations in Paragraph 142 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 142.**

143.    Bavas is entitled to recover actual damages as a result of Defendants' violation of I.C.A. § 714H with regard to Bet #4, as provided in I.C.A. § 714H.5(1).

**ANSWER:  Defendants state that the allegations in Paragraph 143 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 143.**

144.    Bavas is entitled to reasonable attorneys' fees as a result of Defendants' violation of I.C.A. § 714H with regard to Bet #4, as provided in I.C.A. § 714H.5(2).

**ANSWER:  Defendants state that the allegations in Paragraph 144 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 144.**

145.    Defendants' violation of I.C.A. § 714H with regard to Bet #4 was in willful and wanton disregard for the rights of Bavas, entitling Bavas to statutory damages of up to three times the amount of actual damages, as provided in I.C.A. § 714H.5(4).

**ANSWER:  Defendants state that the allegations in Paragraph 145 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 145.**

146.    Pursuant to I.C.A. § 714H.6, Bavas is providing a copy of this Petition to the Iowa Attorney General.

**ANSWER:  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations of Paragraph 146 and, on that basis, denies such allegations.**

## COUNT XIII

### (Breach of Contract on Bet #5)

147.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

148.    Bet #5 was a valid and enforceable written contract between Bavas and Defendants for which Bavas gave good and valuable consideration.

**ANSWER:  Defendants state that the allegations in Paragraph 148 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 148.**

149.    The terms and conditions of the Bet #5 Contract were the Terms; the General Rules; the Market Rules; and the Golf Rules posted on the DraftKings website and accessible through the DraftKings mobile application on February 3-4, 2024.

**ANSWER:  Defendants admit that the Terms, the General Rules, the Market Rules, and the Golf Rules were applicable to the wagers at issue.  Except as expressly admitted, Defendants deny each and every allegation in Paragraph 149.**

150.    Defendants were the drafters of the terms and conditions of the Bet #5 Contract, and the contract was adhesive as to Bavas.

**ANSWER:  Defendants state that the allegations in Paragraph 150 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 150.**

151.    Bavas fully performed under the Bet #5 Contract by depositing sufficient funds into his DraftKings account and placing a valid bet that was accepted by Defendants.

**ANSWER:  Defendants state that the allegations in Paragraph 151 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 151.**

152.    The Defendants, without legal excuse, breached the Bet #5 Contract by failing "to award the winnings/prizes" when the contracted for conditions occurred.

**ANSWER:  Defendants state that the allegations in Paragraph 152 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 152.**

153.    Bavas has suffered damages as a result of Defendants' breach in the amount of $250,067.99 plus prejudgment interest.

**ANSWER:  Defendants state that the allegations in Paragraph 153 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 153.**

### COUNT XIV

**(Breach of the Implied Covenant of Good Faith and Fair Dealing on Bet #5)**

154.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER:  Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

155.    Iowa law recognizes an implied covenant of good faith and fair dealing in all contracts.

**ANSWER:  Defendants state that the allegations in Paragraph 155 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 155.**

156.    The implied covenant prevents one party from using technical compliance with a contract as a shield from liability when that party is acting for a purpose contrary to that for which the contract was made.

**ANSWER:  Defendants state that the allegations in Paragraph 156 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 156.**

157.    Defendants were the drafters of the terms and conditions of the Bet #5 Contract, and the contract was adhesive as to Bavas.

**ANSWER:  Defendants state that the allegations in Paragraph 157 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 157.**

158.    Here, Defendants breached the implied covenant by using rules that were not applicable to the Bet #5 Contract, rather than other, more applicable rules, in an attempt to avoid their obligation under the Bet #5 Contract "to award the winnings/prizes."

**ANSWER:  Defendants state that the allegations in Paragraph 158 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 158.**

159.    Bavas has suffered damages as a result of Defendants' breach of the implied covenant in the amount of $250,067.99 plus prejudgment interest.

**ANSWER:  Defendants state that the allegations in Paragraph 159 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 159.**

## COUNT XV

### (Action Under I.C.A. § 714H.5 for Violation of I.C.A. § 714H.3 on Bet #5)

160.    Bavas repeats and realleges each and every allegation set forth above, as if fully set forth herein.

**ANSWER: Defendants incorporate their responses to all preceding paragraphs as if fully set forth herein.**

161.    Bavas is a "consumer" within the meaning of I.C.A. § 714H.2(3) and an online sports bet is "merchandise" within the meaning of I.C.A. § 714.16(e), made applicable to this proceeding by I.C.A. § 714H.2(6).

**ANSWER: Defendants state that the allegations in Paragraph 161 consist entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendants deny each and every allegation in Paragraph 161.**

162.    Defendants have engaged in prohibited practices and acts under I.C.A. § 714H.3 including acts and practices that were likely to mislead Bavas as to the material facts with regard to Bet #5 by failing to honor a bet accepted by Defendants according to the represented terms on the DraftKings website and accessible with the DraftKings mobile application.

**ANSWER: Defendants state that the allegations in Paragraph 162 consist entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendants deny each and every allegation in Paragraph 162.**

163.    Defendants advertised sports betting throughout Iowa by television, radio, digital advertising and print.

**ANSWER: Defendants deny the allegations in Paragraph 163.**

164.    Defendants engaged in unfair practices and disseminated false, misleading and deceptive information in one or more of the following ways:

    a.    Representing to consumers that winning bets accepted by Defendants would be honored, and Defendants would "award the winnings/prizes";

b.      Concealing or failing to disclose that Defendants would attempt to avoid paying winning bets;

c.      Engaging in the unfair practice of purporting to promise to pay winning bets when Defendants knew, or should have known, that they would not honor that promise;

d.      Asserting Defendants would conduct themselves in accordance with the terms, conditions and rules on the DraftKings website and accessible via the DraftKings mobile application when they would not;

e.      Otherwise failing to honor their promises and representations that they would pay valid, winning bets, regardless of subsequent events.

**ANSWER: Defendants state that the allegations in Paragraph 164 consist entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendants deny each and every allegation in Paragraph 164.**

165.    Bavas has suffered an ascertainable loss of money or property as a result of Defendants' prohibited practices and acts in violation of I.C.A. § 714H with regard to Bet #5.

**ANSWER: Defendants state that the allegations in Paragraph 165 consist entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendants deny each and every allegation in Paragraph 165.**

166.    Bavas is entitled to recover actual damages as a result of Defendants' violation of I.C.A. § 714H with regard to Bet #5, as provided in I.C.A. § 714H.5(1) in the amount of $250,067.99 plus prejudgment interest.

**ANSWER: Defendants state that the allegations in Paragraph 166 consist entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendants deny each and every allegation in Paragraph 166.**

167.    Bavas is entitled to reasonable attorneys' fees as a result of Defendants' violation of I.C.A. § 714H with regard to Bet #5, as provided in I.C.A. § 714H.5(2).

**ANSWER:  Defendants state that the allegations in Paragraph 167 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 167.**

168.    Defendants' violation of I.C.A. § 714H with regard to Bet #5 was in willful and wanton disregard for the rights of Bavas, entitling Bavas to statutory damages of up to three times the amount of actual damages, as provided in I.C.A. § 714H.5(4).

**ANSWER:  Defendants state that the allegations in Paragraph 168 consist entirely of legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny each and every allegation in Paragraph 168.**

169.    Pursuant to I.C.A. § 714H.6, Bavas is providing a copy of this Petition to the Iowa Attorney General.

**ANSWER:  Defendants lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations of Paragraph 169 and, on that basis, denies such allegations.**

**PLAINTIFF'S PRAYER FOR RELIEF**

As to Plaintiff's Prayer for Relief, Defendants deny that Plaintiff is entitled to any relief whatsoever, including the relief he seeks in his Complaint.

**AFFIRMATIVE DEFENSES**

The claims are barred, in whole or in part, because the allegations in the Complaint fail to state a claim upon which relief may be granted.  Defendants reserve the right to assert additional affirmative defenses that discovery indicates are proper.  Defendants have not yet completed discovery of all allegations related to the subject matter of the Complaint and, accordingly,

reserves the right to amend, modify, and revise the affirmative defenses stated below, including the right to plead additional defenses or take any such other actions that are proper and necessary.  Defendants further state that, to the extent that any affirmative defenses pled herein are contradictory, mutually exclusive, or otherwise inconsistent, then Defendants plead such contradictory, mutually exclusive, or otherwise inconsistent affirmative defenses in the alternative.[2]

## FIRST AFFIRMATIVE DEFENSE

### (Release)

Plaintiff is barred, in whole or in part, from prosecuting the purported causes of action set forth in the Complaint because Plaintiff agreed to contract provisions releasing Defendants from liability.  Plaintiff agreed to the Terms of Use and the applicable Rules upon creating his DraftKings Sportsbook account, and those Terms of Use and applicable Rules govern this dispute.  Defendants exercised their contractual rights to void Plaintiff's wagers pursuant to the applicable terms.  Defendants are thus released from any liability.

## SECOND AFFIRMATIVE DEFENSE

### (Waiver/Consent)

Plaintiff is barred, in whole or in part, from prosecuting the purported causes of action set forth in the Complaint as he waived and/or consented to the challenged conduct.  Plaintiff agreed to the Terms of Use and the applicable Rules upon creating his DraftKings Sportsbook account, and those Terms of Use and Rules govern this dispute.  By agreeing to those provisions, Plaintiff

---

[2]  For all defenses alleged here, "Terms of Use" shall refer to the DraftKings Iowa Terms of Use and all terms and conditions incorporated therein.

waived any challenge to Defendants' decision to void Plaintiff's wagers pursuant to the applicable terms.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiff is estopped, in whole or in part, from prosecuting the purported causes of action set forth in the Complaint. As a condition of using Defendants' platform, Plaintiff agreed to the Terms of Use and the applicable Rules upon creating his DraftKings Sportsbook Account. Plaintiff expressly and implicitly represented to Defendants that he would comply with the terms of the applicable Rules and Terms of Use, including by agreeing to be bound by those provisions when registering his account with Defendant and repeatedly placing wagers on Defendants' platform subject to those contractual provisions. By agreeing to be bound by those agreements, Plaintiff is estopped from raising any challenge to Defendants' decision to void Plaintiff's wagers pursuant to the applicable terms.

## FOURTH AFFIRMATIVE DEFENSE

### (Acceptance of Benefits)

Plaintiff is barred, in whole or in part, from prosecuting the purported causes of action set forth in the Complaint under the doctrine of acceptance of benefits. Plaintiff accepted the benefit of using Defendants' online platform, including accepting the benefit derived from placing wagers on that platform, the chance to receiving winnings associated with those wagers, and the refund of his wagers at issue here. By accepting those benefits, Plaintiff was also bound by the rules and contractual provisions governing the placement of wagers, including the Terms of Use and applicable Rules. Because Plaintiff accepted the benefit and associated rules governing the

use of Defendant's platform, he cannot simultaneously challenge Defendants' decision to exercise its contractual right to void Plaintiff's wagers pursuant to the applicable terms.

## FIFTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

Plaintiff is precluded, in whole or in part, from prosecuting the purported causes of action set forth in the Complaint because Plaintiff knowingly accepted the risk that circumstances may arise related to the odds associated with any wager. That risk was disclosed to Plaintiff in several ways, including but not limited to Defendant's House Rule 2.1 and 5.4, which expressly warn that Errors, as the term is defined in House Rule 2.1, may occur and that Defendant may void wagers due to such Errors.

## SIXTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff is precluded, in whole or in part, from prosecuting the purported causes of action set forth in the Complaint to the extent that he engaged in any inequitable, unfair, or bad faith conduct against Defendants.

## SEVENTH AFFIRMATIVE DEFENSE

### (Ratification)

Plaintiff is precluded, in whole or in part, from prosecuting the purported causes of action in the Complaint to the extent that he took actions to ratify the conduct complained of in his Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

### (Preemption)

Iowa law preempts any attempt by Plaintiff to challenge Defendant's decision to void his wager.

## NINTH AFFIRMATIVE DEFENSE

### (Justification/Privilege)

Plaintiff is precluded, in whole or in part, from prosecuting the purported causes of action set forth in the Complaint because Defendants' voiding of Plaintiff's wager was justified and/or privileged.

## TENTH AFFIRMATIVE DEFENSE

### (Extinguishment of Obligations)

Plaintiff is precluded, in whole or in part, from prosecuting the purported causes of action set forth in the Complaint under the doctrine of extinguishment of obligation. All of Defendants' obligations to Plaintiff related to his wager were extinguished because Defendants conduct was permitted by the applicable Rules, the Terms of Use.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Offset/Setoff)

Plaintiff's claims for damages and any other monetary recovery are barred by the doctrine of "offset" or "setoff".  Notably, Defendants have already refunded to Plaintiff the amount of his wagers, and any claim of recovery that Plaintiff may seek must be offset by that amount.

## TWELFTH AFFIRMATIVE DEFENSE

### (No Damages)

Plaintiff's claims for damages and any other monetary recovery are barred because Defendants have already refunded Plaintiff's wagers.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

Plaintiff is precluded, in whole or in part, from prosecuting the purported causes of action set forth in the Complaint under the doctrine of accord and satisfaction because Defendants have refunded Plaintiff's wagers. Such payment satisfies any alleged obligation that Defendants have to Plaintiff, and under the applicable Rules, which are incorporated by reference into the Terms of Use. Plaintiff is not entitled to any further payment related to his voided wagers.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Novation)

Plaintiff's breach of contract claim is barred by the doctrine of novation. To the extent that Plaintiff premises his claims on the breach of a contract other than the Terms of Use and applicable Rules, that purported agreement (to the extent it exists) was superseded by the written version of the applicable Rules and Terms of Use that Plaintiff agreed to be bound by.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Statute of Frauds)

Plaintiff's breach of contract claim is barred by the statute of frauds to the extent that Plaintiff alleges the breach of any purported oral agreement that was required to be memorialized in writing.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

Plaintiff's claims for equitable relief are barred to the extent that Plaintiff can establish that he has an adequate remedy at law.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Compliance with the Law)

The actions taken by Defendant were in full compliance with the law.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Breach of Contract / Breach of the Implied Covenant of Good Faith and Fair Dealing)

Any obligations owed to Plaintiff by Defendants under any alleged contract were excused by Plaintiff's breach of the alleged contract and/or breach of the implied covenant as Plaintiff has either intentionally misconstrued the applicable Terms of Use and applicable Rules or is improperly using purported technical compliance with contract language to bring this action and he is now attempting to improperly collect millions of dollars and deprive Defendants of contractual benefits.

### DEFENDANTS' PRAYER FOR RELIEF

**WHEREFORE**, Defendants pray for relief as follows: (a) that Plaintiff take nothing by reasons of his Complaint, and that judgment be entered against Plaintiff and in favor of Defendants; (b) that Defendants be awarded all costs and expenses they incurred in litigation this action; (c) that Plaintiff's jury demand be stricken; and (d) that Defendants be granted such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED:  July 28, 2025                    **BELIN McCORMICK, P.C.**


By:  _/s/ Matthew D. Callanan_
Matthew D. Callanan
666 Walnut Street, Suite 2000
Des Moines, IA  50309-3989
Telephone:     (515) 243-7100
Facsimile:      (515) 558-0639
Email: mdcallanan@belinmccormick.com

**COBLENTZ PATCH DUFFY & BASS LLP**


By:  _/s/ Richard R. Patch_
Richard R. Patch *(pro hac vice)*
Rees F. Morgan *(pro hac vice)*
Emlyn R. Mandel *(pro hac vice)*
Franklin Krbechek *(pro hac vice)*
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone:  415.391.4800
Facsmile:  415.989.1663
Email:       ef-rrp@cpdb.com
                ef-rfk@cpdb.com
                ef-erm@cpdb.com
                ef-fsk@cpdb.com

Counsel for Defendants DRAFTKINGS INC. and
CROWN IA GAMING LLC