IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| NICHOLAS BAVAS,<br><br>                Plaintiff,<br><br>v.<br><br>DRAFTKINGS INC., and CROWN IA GAMING LLC d/b/a/ DraftKings,<br><br>                Defendants. | Case No. 4:25-cv-00185-SHL-SBJ<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF DISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' RESISTANCE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff Nicholas Bavas ("Bavas") for his Response to Defendants DraftKings Inc. ("DraftKings") and Crown IA Gaming LLC' (collectively, "Defendants") Statement of Disputed Material Facts in support of their resistance to Bavas's motion for partial summary judgment, stats as follows:

1. DraftKings operates an online Sportsbook that allows customers in Iowa to place bets on sporting events through DraftKings' web browser and mobile application. (Plaintiff's Appendix ("App.") 58; *see also* Def. App. 2, ¶ 3 (Declaration of Tom Butterworth ("Butterworth Decl.")).)

**RESPONSE: Admitted.**

**DraftKings' Terms of Use and House Rules**

2. To participate in the online Sportsbook, participants must agree to and comply with DraftKings' Terms of Use ("TOU") and applicable rules, including but not limited to the General Rules, Market Rules, Golf Rules, and Sport Specific Limits Rules (collectively, the "House Rules" or "Rules"). (Defendants' Appendix ("Def. App.") 10-52; *see also* Def. App. 2, ¶ 4 (Butterworth

1

Decl.).) The House Rules are incorporated by reference and fully integrated into the TOU. (Def. App. 2, ¶ 4 (Butterworth Decl.); *see also* Def. App. 11.)

**RESPONSE: Admitted.**

3.  The TOU and House Rules are accessible to Iowa users on DraftKings' Sportsbook website and mobile application. (Def. App. 2, ¶ 5 (Butterworth Decl.); App. 58.)

**RESPONSE: Admitted.**

4.  The TOU and House Rules are subject to the Iowa Racing and Gaming Commission's regulations. (Def. App. 3, ¶ 6 (Butterworth Decl.); Def. App. 17.)

**RESPONSE: Admitted.**

5.  The TOU and House Rules are intended to guarantee fair gaming practices, prevent fraud and manipulation, guard against bets that are influenced by outside factors, and preserve the integrity of the sports betting process. (Def. App. 3, ¶ 6 (Butterworth Decl.).)

**RESPONSE: Denied. The TOU and House Rules speak for themselves, and the words "fair" and "manipulation" do not appear anywhere in the TOU and House Rules; the word "fraud" only appears in the context of "financial fraud" and DraftKings's disclaimer of responsibility (Def. App., Doc. 29-3, pp. 13; 14); the word "influence" only appears in the context of "influence betting," defined as " where an Authorized Account Holder, or parties acting in association with an Authorized Account Holder, can influence the outcome of a game or an event - directly or indirectly." (Def. App., pp. 19; 21). The phrase "influenced by factors outside of the event" and the word "integrity" as set forth in the House Rules clearly relates to manipulation and game-rigging of the event itself. (Def. App., p. 20).**

6.  The TOU is a "legal agreement" between the parties and each participant in the Sportsbook represents that "[b]y accessing or using the Website . . . [they] agree to comply with and be bound by these Terms[.]" (Def. App. 11.)

**RESPONE: Denied as to whether or not the TOU is a "legal agreement" as an impermissible legal conclusion  *See Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000), *aff'd*, 19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling**

2

**on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted."). Otherwise admitted.**

7. Similarly, the General Rules provide that when a participant "plac[es] a bet on the DraftKings Sportsbook," they represent that they have "read, understand[], and will adhere to these Rules, as well as the Terms at the time of the bet placement." (Def. App. 17.) A Sportsbook participant's "ability to participate in the online gaming" is "subject to the[] Terms of Use . . . [and] the DraftKings Sportsbook House Rules[.]" (Def. App. 11.)

**RESPONSE: Admitted.**

8. The General Rules state that "DraftKings has the right to enforce any of these Rules" against any DraftKings' account holder in its "sole and absolute discretion." (Def. App. 23 (General Rule 6.10).)

**RESPONSE: Admitted as to the quoted language appearing in the General Rules, otherwise denied as an impermissible legal conclusion as to the language's enforceability with respect to Bavas's Bets.** *See Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000), *aff'd*, 19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted.").

9. Consistent with that directive, the House Rules permit DraftKings to void bets in specific, prescribed circumstances. For example, under the Tournament Futures Winner ("TFW") Rule in the Golf Rules, which governs all "[a]ll futures bets," "[i]n the event that there is a change to or decrease in the booked number of rounds or openings played in the competition . . . futures bets [that] were placed after the last shot of the previous completed round . . . will be void." (Def. App. 39 (Golf Rules).) The Market Rules define a "[f]utures" bet as "when [a participant] choose[s] from a list of alternatives and bet[s] on where a participant wins or places within a specified position in the classification of the listed event/competition." (Def. App. 29 (Market Rules).)

3

**RESPONSE: Admitted as to the quoted language appearing in the Golf Rules, otherwise denied as an impermissible legal conclusion as to the language's enforceability with respect to Bavas's Bets.** *See Nichols v. Chacon*, **110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000),** *aff'd,* **19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted.").**

10. According to General Rule 4.6.4, DraftKings may also "withhold payment and/or [] declare bets void on an event [], if DraftKings determines, in its sole discretion" that there is an "occurrence that, in the reasonable discretion of DraftKings, would tend to show that the event [] was unduly influenced by factors outside of the event [] itself." (Def. App. 19 (General Rule 4.6.4).)

**RESPONSE: Admitted as to the quoted language appearing in the General Rules, otherwise denied as an impermissible legal conclusion as to the language's enforceability with respect to Bavas's Bets.** *See Nichols v. Chacon*, **110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000),** *aff'd,* **19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted.").**

11. According to General Rule 5.4.8, DraftKings may void bets "at its own discretion" if "it is obvious" that "there is evidence of a series of bets each containing the same (or very similar) selection(s) having been placed by the same individual[.]" (Def. App. 20-21 (General Rule 5.4.8).)

**RESPONSE: Admitted as to the quoted language appearing in the General Rules, otherwise denied as an impermissible legal conclusion as to the language's enforceability with respect to Bavas's Bets.** *See Nichols v. Chacon*, **110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000),** *aff'd,* **19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted.").**

12. The House Rules permit DraftKings to void bets that were obviously impacted by an Error. According to General Rule 5.4.1, DraftKings can "at its own discretion, [] declare a bet void, totally or partly, irrespective if the bet is settled, if it is obvious that" the bet was "offered, placed and/or accepted due to an Error" (the "Error Rule"). (Def. App. 20 (General Rule 5.4.1).)

**RESPONSE: Admitted as to the quoted language appearing in the House Rules, otherwise denied as an impermissible legal conclusion as to the language's enforceability with respect to Bavas's Bets.** *See Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000), *aff'd*, 19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted.").

13. General Rule 2.1 defines an "Error" broadly to include, among other things, a "mistake, . . . misinterpretation, mishearing, misreading, mistranslation, . . . transaction error, manifest error, force majeure and/or similar." (Def. App. 17 (General Rule 2.1).)

**RESPONSE: Admitted as to the quoted language appearing in the House Rules, otherwise denied as an impermissible legal conclusion as to the language's enforceability with respect to Bavas's Bets** *See Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000), *aff'd*, 19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted."). **Also denied as to Counsel's characterization of the rule defining an "Error" "broadly."**

14. When a Sportsbook participant's bets are voided, DraftKings refunds wagers on those bets consistent with the TOU. (Def. App. 5, ¶ 17 (Butterworth Decl.).)

**RESPONSE: Admitted.**

15. In addition to voiding bets, DraftKings also has an independent right to exercise its "sole discretion" to not award winnings or prizes if a participant "violat[es] [] [the] Rules or the Terms of Use" or "engage[s] in conduct . . . [DraftKings] deems to be improper, unfair or otherwise adverse to the operation of the Game[.]" (Def. App. 12.) By way of example, the TOU specifically prohibits "[c]olluding with any other individual(s) or engaging in any type of syndicate play[,]" or "[a]busing the Website in any way." (*Id.*) The TOU also states that a participant's winnings and prizes are "[s]ubject to [DraftKings] verifying [the participant's] compliance with the Terms, Rules and other conditions of participation[.]" (Def. App. 14.)

**RESPONSE: Admitted as to the quoted language appearing in the TOU, otherwise denied as an impermissible legal conclusion as to the language's enforceability with respect to Bavas's Bets.** *See Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000), *aff'd*,

5

**19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted.").**

<b><u>Bavas's Bets on the 2024 AT&T Pro-Am Golf Tournament (the "Tournament")</u></b>

16. On February 24, 2020, Plaintiff Nicholas Bavas ("Bavas") created a registered account on DraftKings' Sportsbook. (Def. App. 3, ¶ 10 (Butterworth Decl.).) Bavas agreed to be bound by the TOU and House Rules when he registered his account with DraftKings and repeatedly placed bets on the Sportsbook platform. (Mot. at 10-11; Def. App. 4, ¶ 13 (Butterworth Decl.).)

**RESPONSE: Admitted.**

17. The PGA Tournament took place in Pebble Beach, California on February 1-3, 2024. (App. 59, 205-06.)

**RESPONSE: Admitted.**

18. On February 3, 2024, at the end of Round 3 of the Tournament, the Tournament "Leaderboard" displayed the player in the lead and the other players in the top 20 positions. (App. 205-06.)

**RESPONSE: Admitted.**

19. Between February 3, 2024 at 10:04 PM CST and February 4, 2024 at 12:01 AM CST, Bavas placed a series of five 20-leg parlays on DraftKings' Sportsbook, in which he selected the placement of various golfers at the end of the Tournament. (Def. App. 3, ¶¶ 11-12 (Butterworth Decl.); App. 178-97.) Bavas placed the following bets: Bet No. 1 included a $100.00 bet at +4651471 odds (App. 178-81); Bet No. 2 included a $50.00 bet at +4651471 odds (App. 182-85); Bet No. 3 included a $100.00 bet at +4651471 odds (App. 186-89); and Bet No. 4 included a $50.00 bet at +4651471 odds (App. 190-93). Bet Nos. 1-4 predicted Wyndham Clark as the

Tournament winner, and they selected the same picks for the top 5, top 10, and top 20 finishers at the end of the Tournament. (*See* App. 178-93; Def. App. 3, ¶ 12 (Butterworth Decl.).) For Bet No. 5, Bavas placed a $25.00 bet at +1000171 odds, and he selected the top 20 finishers in the Tournament in no particular order. (App. 194-97; Def. App. 4, ¶ 12 (Butterworth Decl.).) Bavas staked a total of $325 on these bets. (App. 179-97; Def. App. 4, ¶ 12 (Butterworth Decl.).)

**RESPONSE: Admitted.**

20.   For all five bets, Bavas chose the same top 20 players that were in the top 20 of the Leaderboard at the close of Round 3, and for four of his bets, he selected Wyndham Clark, then at the top of the Leaderboard, as the tournament winner. (*Compare* App. 205-06 (final results after Round 3) *with* App. 179-97 (Bavas's Bet Nos. 1-5).)

**RESPONSE: Denied. Bet No. 5 included different players than Bets 1-4. (Compare App. Doc. 22-2, p. 192 with p. 196). Admitted that in four of his bets, Bavas selected Wyndham Clark as the tournament winner.**

21.   At the time Bavas placed his bets, a significant stormfront had impacted the California coastline. (Def. App. 54-57.)[1]

**RESPONSE: Admitted**

22.   The DraftKings trading team is responsible for setting and monitoring betting limits. (Def. App. 5, ¶ 15 (Butterworth Decl.).) The trading platform has a $5 million hard cap on potential payouts for parlay bets. (*Id.*) If Bavas had placed a single parlay bet showing a $14

---

[1] DraftKings cites to a news article from the PGA website about the Tournament weather that is included in DraftKings' Appendix and available at https://www.pgatour.com/article/news/latest/2024/01/31/wild-weather-expected-at-at-t-pebble-beach-pro-am. This Court may take judicial notice of the weather conditions at the Tournament. *See* Fed. R. Civ. P. 201(b)-(c); *Am. Fam. Mut. Ins. Co. v. Miell*, No. C04-0142, 2008 WL 2773713, at *1 (N.D. Iowa July 16, 2008) ("[T]he Court takes judicial notice of the historic flood which occurred in Cedar Rapids during June 2008"); *Doe v. Drake Univ.*, No. 416CV00623RGESBJ, 2017 WL 11404865, at *4 & n. 2 (S.D. Iowa June 13, 2017) (taking judicial notice of news articles).

million payout on a $325 wager, the bet would have been automatically declined under this system limit. (*Id.*)

**RESPONSE: Denied. There is nothing in the TOU or Rules about "betting limits" or a "$5 million hard cap on potential payouts for parlay bets," or that a single parlay bet with a payout over any amount will be "automatically declined." (Def. App., pp. 12-47).**

23. At the time Bavas placed his bets, DraftKings' trading team knew it was possible that Round 4 of the Tournament might not proceed given the inclement weather. (Def. App. 5, ¶ 16 (Butterworth Decl.).) But at that point, the PGA had made no announcement regarding cancelling or even postponing Round 4 and if Round 4 had proceeded, the odds offered at the time were correct and accurately reflected the extremely remote possibility of the Leaderboard remaining entirely unchanged after Round 4 of active play had concluded. (*Id.*) The odds set by DraftKings and available to customers at the end of Round 3 therefore presumed that Round 4 would proceed, as they had to at the time. (*Id.*) The DraftKings trading team also correctly and reasonably believed that if Round 4 was later cancelled, bets based upon odds contemplating Round 4 would be voidable under the TOU and House Rules. (*Id.*)

**RESPONSE: Denied insofar the "correctness" or "reasonableness" of any belief by the DraftKings trading team that bets "would be voidable under the TOU and House Rules" are impermissible legal conclusions. *See Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000), *aff'd*, 19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted."). Otherwise admitted.**

24. On February 4, 2024 at 12:47 PM ET, the PGA announced that it had "postponed" Round 4 of the Tournament to February 5, 2024 because of "inclement weather and safety concerns." (App. 200.) However, later that evening at 9:15 PM ET, the PGA officially cancelled Round 4, and the Leaderboard at the conclusion of Round 3 became the "final" results of the Tournament. (*Id.*)

**RESPONSE: Admitted.**

**DraftKings Voids and Refunds Bavas's Bets**
**Under the Terms of Use and House Rules**

25. On February 5, 2024, DraftKings voided Bavas's post-Round 3 bets in accordance with the TOU and House Rules once the PGA cancelled Round 4. (Def. App. 5, ¶ 17 (Butterworth Decl.).) On February 20, 2024, a DraftKings Risk Management Specialist informed Bavas by email that DraftKings determined that Bavas's bets were void under various House Rules, including but not limited to the TFW Rule and General Rules 4.6.4 and 5.4.1:

> On Sunday, February 4, 2024, the PGA canceled the final round of the Pebble Beach Pro-Am due to severe weather and declared the results final based on the previously completed rounds. Accordingly, DraftKings voided futures wagers on this event that were placed after the conclusion of Round 3 play on Saturday, February 3, 2024, pursuant to the DraftKings Sportsbook House Rules ("House Rules") for golf, which contain language stating that "in the event there is a change to or decrease in the number of booked rounds played in the competition . . . futures bets [that] were placed after the last shot of the previous completed round . . . will be void." This included wagers on the golfer to win the tournament, as well as wagers on a golfer to finish in a specific position (e.g., to finish Top-5, Top-10, Top-20), which are futures bets, as defined in the House Rules.
>
> Following our review, we determined that [Bavas's] wagers would also be void pursuant, including but not limited to General Rules 4.6.4 . . . and 5.4.1 of the House Rules, among other reasons, because the severe weather materially threatened completion of the tournament at the time of bet placement and it was obvious that the likelihood of cancellation was not being reflected in the odds offered following the conclusion of Round 3.

(Def. App. 5-6, ¶ 18 (Butterworth Decl.).)

**RESPONSE: Admitted as to the quoted language appearing in an email to Bavas, otherwise denied in its entirety as an impermissible legal conclusion as to the cited Rules' enforceability with respect to Bavas's Bets.** *See Nichols v. Chacon*, **110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000),** *aff'd*, **19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted.").**

26. DraftKings determined that all futures bets on the Tournament that were placed after Round 3 concluded, including Bavas's bets, were void under the TFW Rule. (Def. App. 6, ¶ 19 (Butterworth Decl.).) The purpose of the TFW Rule is entirely reasonable and common in the

9

industry. (*Id.*) If an intervening event unrelated to a golfers' performance – such as an earthquake, terrorist attack, or, as here, bad weather – forces cancellation of a round, the TFW Rule allows DraftKings and indeed every other Sportsbook to void bets that were based upon athletic performance that never occurred. (*Id.*)

      **RESPONSE: Denied in its entirety as a series of impermissible legal conclusions.** *See Nichols v. Chacon***, 110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000),** *aff'd***, 19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted.").**

      27.    DraftKings also determined that it was necessary to void Bavas's bets to the extent that his bets took advantage of the bad weather that resulted in cancellation of Round 4 at the Tournament, which is not permitted under the TOU and House Rules. (Def. App. 6, ¶ 20 (Butterworth Decl.).) When Bavas placed his bets after the close of Round 3, it was apparent that bad weather might impact further play and result in cancellation of Round 4. (*Id.*) He wagered that the Leaderboard at the close of Round 3 would be the same exact Leaderboard at the end of the Tournament. (Def. App. 6-7, ¶ 20 (Butterworth Decl.).) His bets involved 20-leg parlays, extreme and risky bets, with extraordinarily long odds of one-in-47,000 or one-in-10,000. (Def. App. 7, ¶ 20 (Butterworth Decl.).) DraftKings determined that Bavas was not betting on the performance of the athletes in the Tournament and was instead improperly betting that Round 4 would be cancelled due to inclement weather. (*Id.*)

      **RESPONSE: Denied as a series of impermissible legal conclusions.** *See Nichols v. Chacon***, 110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000),** *aff'd***, 19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted."). Admitted that "when Bavas placed his bets after the close of Round 3, it was apparent that bad weather might impact further play and result in cancellation of Round 4" and that Bavas's bets "involved 20-leg parlays, extreme and risky bets, with extraordinarily long odds of one-in-47,000 or one-in-10,000."**

28. Consistent with the TOU, on February 5, 2024, DraftKings refunded Bavas's wagers on his voided bets, which totaled $325, to his DraftKings account. (Def. App. 5, ¶ 17 (Butterworth Decl.).)

**RESPONSE: Admitted that DraftKings refunded Bavas's wagers on his voided bets, otherwise denied as an impermissible legal conclusion.** *See Nichols v. Chacon*, **110 F. Supp. 2d 1099, 1100 (W.D. Ark. 2000),** *aff'd*, **19 F. App'x 471 (8th Cir. 2001) ("A party cannot dictate the court's ruling on legal issues by attempting to disguise 'legal conclusions' as 'statements of undisputed material facts' and then ask the court to deem them admitted.").**

DATED: October 17, 2025                     Respectfully Submitted,


                                            s/Darren T. Kaplan_____
                                            Darren T. Kaplan, Esq.
                                            (*Admitted pro hac vice*)
                                            KAPLAN GORE LLP
                                            One Paces West
                                            2727 Paces Ferry Road SE, Suite 750
                                            Atlanta, GA 30339
                                            Telephone:  404-537-3300
                                            Facsimile:   404-537-3320
                                            Email: dkaplan@kaplangore.com


                                            s/Benjamin K. Lynch_____
                                            Benjamin K. Lynch, Esq.
                                            BEN LYNCH LAW
                                            8550 Hickman Road
                                            Clive, IA 50325
                                            Telephone: 515-276-3921
                                            E-mail: ben@benlynchlaw.com

                                            *Attorneys for Plaintiff Nicholas Bavas*