IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| NICHOLAS BAVAS,<br><br>Plaintiff,<br><br>vs.<br><br>DRAFTKINGS, INC. and CROWN IA GAMING LLC, d/b/a DraftKings,<br><br>Defendants. | No. 4:25-cv-00185-SHL-SBJ<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Following the end of the third round of a four-round professional golf tournament, Plaintiff Nicholas Bavas placed a series of unusual bets in which he predicted that the top twenty finishers at the end of the tournament would be exactly the same—and in exactly the same order—as they were after the third round. This was highly unlikely to occur, and thus Defendants DraftKings, Inc., and Crown IA Gaming, LLC (collectively, "DraftKings") gave Bavas odds as high as 46,714 to 1 on his bets. It turns out, however, that Bavas was not really betting on how golfers would perform in the fourth round. Instead, due to severe weather in the area where the tournament was being played, he was betting that the fourth round would not occur at all, and thus that the third-round leaderboard would become the "final" leaderboard. When this indeed occurred, DraftKings voided Bavas' bets rather than paying out his "winnings" of over $14 million. This lawsuit followed.

The Court concludes that DraftKings had the right to void Bavas' bets under a contract provision giving the company discretion to void bets when there is an "error" or "mistake" that results in a customer being given odds that are "clearly incorrect." Here, DraftKings offered odds to Bavas based on one thing (the top twenty remaining the same if the fourth round was played), but he placed bets based on something else (the fourth round being cancelled). The latter was far more likely to occur than the former. Accordingly, and for reasons stated more fully below, the Court GRANTS DraftKings' Motion for Summary Judgment (ECF 88) and DENIES Bavas' Motion for Summary Judgment (ECF 91).

## I. STATEMENT OF UNDISPUTED FACTS.

When cross-motions for summary judgment are filed, the Court must view the facts in the light most favorable to the plaintiff on the defendant's motion and in the light most favorable to

the defendant on the plaintiff's motion. *See Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 614 (N.D. Iowa 2019). Consistent with this dichotomous standard, this section generally will deal with genuine factual disputes by separately stating what each of Bavas and DraftKings alleges. Undisputed facts are stated without attribution to either side.

*A. General Background Regarding DraftKings.*

DraftKings operates an online Sportsbook that allows customers in Iowa to place bets on sporting events. (ECF 109-1, ¶ 1.) To participate in the online Sportsbook, participants must agree to DraftKings' Terms of Use and applicable Rules, including, as relevant here, General Rules, Golf Rules, Market Rules, and Sport Specific Limits Rules (collectively, the "Rules"). (ECF 109-1, ¶ 2.) The Terms of Use and Rules are accessible on DraftKings' website and mobile application. (ECF 109-1, ¶ 3.) When customers place bets, they represent that they have "read, understand[], and will adhere to these Rules, as well as the Terms at the time of the bet placement." (ECF 109-1, ¶ 7.) The Terms of Use are binding on DraftKings and the customer. (ECF 109-1, ¶ 6.)

The Terms of Use contain a section entitled "Conditions of Participation" that states:

> By entering a Game, you agree to be bound by the Agreements and the Rules and the decisions of DraftKings, which shall be final and binding in all respects. The Company, at its sole discretion, may terminate or suspend your Account, disqualify you from a Game, refuse to award benefits or prizes and require the return of any prizes if you engage in conduct or otherwise utilize any information the Company deems to be improper, unfair or otherwise adverse to the operation of the Game or is in any way detrimental to other Game participants.

(ECF 88-3, p. 17.) The Terms of Use list ten bullet-pointed scenarios to exemplify "improper" conduct. (Id.) Later, the Terms of Use state: "Participation in each Game must be made only as specified in the Terms of Use. Failure to comply with these Terms of Use will result in disqualification and, if applicable, prize forfeiture." (Id., p. 18.) The Terms of Use and Rules contain many other provisions of potential relevance, all of which will be discussed below in the Legal Analysis section.

*B. Bavas' Betting Activity on the 2024 AT&T Pro-Am Golf Tournament in Pebble Beach, California.*

Bavas created a registered account on the DraftKings Sportsbook in February 2020 and agreed to be bound by the Terms of Use and Rules. (ECF 109, ¶ 20.) This dispute revolves around bets he placed in early February 2024 on the results of the AT&T Pro-Am Golf Tournament in Pebble Beach, California (the "Tournament"). (E.g., ECF 108-1, ¶¶ 28, 37.) Like most Professional

Golfers' Association ("PGA") Tour events, the Tournament was originally scheduled to consist of four rounds of eighteen holes each.[1] In this instance, however, the Tournament ended after fifty-four holes and three completed rounds due to inclement weather. (ECF 108-1, ¶ 29.) The case revolves around betting activity that occurred after the end of Round Three but before Round Four was officially cancelled. The relevant timeline and events consist of the following:

The last shot of Round Three occurred on February 3, 2024, at 5:40 p.m.[2] (ECF 109-1, ¶ 22.) At that time, Wyndham Clark was the leading the Tournament. (ECF 109-1, ¶ 23.) The top twenty (and ties) consisted of the following:

| Position | Player |
|---|---|
| 1 | Wyndham Clark |
| 2 | Ludvig Åberg |
| 3 | Matthieu Pavon |
| T4 | Mark Hubbard |
| T4 | Thomas Detry |
| T6 | Jason Day |
| T6 | Tom Hoge |
| T6 | Justin Thomas |
| T6 | Scottie Scheffler |
| 10 | Sam Burns |
| T11 | Justin Rose |
| T11 | Keegan Bradley |
| T11 | Patrick Cantlay |
| T14 | Eric Cole |
| T14 | Peter Malnati |
| T14 | Collin Morikawa |
| T14 | Si Woo Kim |
| T14 | Beau Hossler |
| T14 | Emiliano Grillo |
| T20 | Adam Scott |
| T20 | Cam Davis |
| T20 | Christiaan Bezuidenhout |

[1] Neither side included this fact in their statements of undisputed facts, but the Court will take judicial notice of it, as it is (a) well-known, (b) undisputed, and (c) an obvious premise to the facts submitted by each side.
[2] Consistent with the parties' summary judgment submissions (e.g., ECF 108-1, ¶ 35), all times in this Statement of Undisputed Facts are central standard time.

| | |
|---|---|
| T20 | Erik van Rooyen |
| T20 | J.T. Poston |
| T20 | Sahith Theegala |

(ECF 109-1, ¶ 23.) At 10:04 p.m. that night, Bavas placed the first of what ended up being five parlay bets on the Tournament on DraftKings' Sportsbook. (ECF 109-1, ¶ 24.) A "parlay" is when a customer makes a single wager that combines two or more individual bets (known as "legs"). The bet is successful only if the customer wins each leg.

Bavas' first bet ("Bet No. 1") was a twenty-leg parlay in which he picked the Tournament winner and Top Five, Top Ten, and Top Twenty finishers. (ECF 109-1, ¶ 24.) His picks mirrored the leaderboard at the end of Round Three; i.e., he picked Wyndham Clark to win; the remainder of the top five to include Ludvig Åberg, Mark Hubbard, Matthiew Pavon, and Thomas Detry; and so on. (Id.) Because there was a six-way tie for twentieth place after Round Three, Bet No. 1 included only one of those six players, Erik van Rooyen, as a Top Twenty finisher. (Id.) The odds offered on DraftKings' Sportsbook for Bet No. 1 were 46,514.71 to 1. (Id.) These odds were premised on Round Four being played. (ECF 109-1, ¶ 67.)[3] It is clear in context that Bavas made this bet to leverage the possibility of Round Four being cancelled due to weather. In other words, he was betting on the weather.

At 11:22 p.m., Bavas placed another bet ("Bet No. 2"), this time in the amount of $50. (ECF 109-1, ¶ 25.) Other than the amount of the wager, Bet No. 2 was the same twenty-leg parlay, with the same picks, as Bet No. 1. (Id.) The odds were again 46,514.71 to 1. (Id.) At 11:59 p.m., Bavas placed the identical bet for a third time in the amount of $100 ("Bet No. 3"), again with odds of 46,514.71 to 1. (ECF 109-1, ¶ 26.) He then placed the same bet in the amount of $50, with the same odds, a fourth time ("Bet No. 4") two minutes later, at 12:01 a.m. on February 4, 2024. (ECF 109-1, ¶ 27.)

In addition to Bet Nos. 1–4, Bavas placed a similar—but not identical—fifth bet in the amount of $25 ("Bet No. 5") consisting of a twenty-leg parlay in which he picked the Top Twenty finishers in no particular order. (ECF 109-1, ¶ 28.) This time, he did not include Wyndham Clark,

[3] Bavas purported to "deny" this fact. His denial revolved, however, around semantics like whether the 46,514.71 to 1 odds were "accurate" and whether such odds should be characterized as "extremely remote." (ECF 109-1, ¶ 67.) This type of semantic quibbling is not enough to create a genuine dispute as to whether the odds presumed that Round Four would be played. They clearly did.

Ludvig Åberg, or Matthieu Pavon in the parlay even though they were in first, second, and third place at the time. (Id.) The odds offered on Bet No. 5 were 10,001.71 to 1. (ECF 109-1, ¶ 28.)

In total, Bavas staked $325 on Bet Nos. 1–5 for a total potential payout of approximately $14 million. (ECF 109-1, ¶ 29.) Bavas placed all five bets in his own name and under his own account. (ECF 108-1, ¶ 43.) DraftKings accepted the bets (ECF 108-1, ¶ 42), although it notes that the bets "[redacted]" (ECF 108-2, ¶ 92).

Bavas was aware when he placed the bets of the potential for bad weather at the Tournament. (ECF 109-1, ¶¶ 35, 56.) He was part of a group text chat with friends who discussed the inclement weather and potential for "long shot" and/or "loophole" bets. (ECF 109-1, ¶¶ 39–41.) His friends placed similar parlay bets to the ones Bavas placed. (ECF 109-1, ¶¶ 40, 43–45.) At 11:13 p.m. that night, Bavas circulated a pdf of "the DK Golf Rules for when the tournament gets called and they pull [the bets] off their site." (ECF 109-1, ¶ 50; ECF 88-3, p. 121.) The group text included weather-related updates about Round Four, during which references were made to the situation being a "loophole" and the potential for winning "millions." (ECF 109-1, ¶¶ 58–60.) Bavas described the situation as an opportunity to "f*** the establishment." (ECF 109-1, ¶ 62.)

At 9:19 a.m. on February 4, 2024, the PGA announced that Round Four would be delayed due to weather. (ECF 109-1, ¶ 64.) Later that morning, Round Four was officially "postponed." (Id.) At 8:15 p.m. that night, Round Four was officially cancelled, and the PGA announced that the leaderboard as it existed at the end of Round Three would constitute the final leaderboard. (Id.) DraftKings then voided Bavas' bets (and similar bets placed by other customers) and refunded the $325 Bavas had wagered on Bet Nos. 1–5. (ECF 109-1, ¶¶ 70, 75.)

*C. DraftKings' Internal Communications Regarding Betting on the Tournament.*

DraftKings was aware during the Tournament that severe weather might impact Round Four. On February 2, 2024 (the second day of the tournament), the head of the company's Golf Trading team, Stuart Purling [redacted]" (ECF 108-1, ¶¶ 32–33.) Shortly before Round Three ended on February 3, Purling sent a Slack message stating:

[redacted]

[redacted]

(ECF 108-1, ¶ 34; ECF 89-3, p. 44.) At 7:55 p.m. on February 3, DraftKings traders exchanged messages about [redacted]. (ECF 108-1, ¶ 35.) One trader, Denny Liu, said: "[redacted]." (Id.; ECF 89-3, p. 46.)

At 10:22 p.m., Stave Baumohl, President of Trading at DraftKings, messaged the golf trading team to say, "[redacted]" (ECF 108-1, ¶ 36.) The trading team responded by freezing all four of the Tournament markets. (Id.) Baumohl immediately asked, "[redacted]" (Id.) The markets were then reopened to accept bets. (Id.) A few hours later, a senior member of the DraftKings trading team asked Purling, "[redacted]" (ECF 108-1, ¶ 51.) Purling responded, "[redacted]" (Id.)

During subsequent internal communications, DraftKings continued discussing the impact of the DraftKings' Rules if the weather forced the cancellation of Round Four. (ECF 108-1, ¶¶ 52–54.) Purling initially said that "[redacted]" before later quoting a DraftKings rule that states: "[redacted]." (ECF 108-1, ¶ 52.) When Kier Adams, DraftKings' Director of Trading, sent a warning about "[redacted]," Purling responded to say, "[redacted]." (ECF 108-1, ¶ 53.) Adams responded, "[redacted]" (Id.)

A different DraftKings employee, Jackson Williams, told Adams, "[[redacted][.]" (ECF 108-1, ¶ 55.) Adams responded, "[redacted]." (Id.) After additional messages expressing concerns about [redacted]

[redacted], Williams wrote, "[redacted]" (ECF 108-1, ¶ 56.)

At some point, DraftKings' then-Senior Director of Product Operations, Tom Butterworth, [redacted]. (ECF 108-1, ¶ 54.) The [redacted]." (Id.) Butterworth said, "[redacted]." (Id.) Adams agreed, stating: "[redacted]." (Id.) Butterworth then reported that [redacted]. (Id.)

At 5:21 p.m. on February 4, 2024, DraftKings Vice President of Business Development, Steve Lang, said [redacted]. (ECF 108-1, ¶ 57.) Butterworth said, "[redacted]" (Id.) Lang asked if DraftKings could "[redacted]." (Id.) Butterworth responded, "[redacted]" (Id.) Lang said, "[redacted]." (Id.) Butterworth said, "[redacted]." (Id.)

Later that night, Butterworth said, "[redacted]." (ECF 108-1, ¶ 61.) The following day, Quieros [redacted]:

> [redacted]

(ECF 108-1, ¶ 62.) This language comes from a provision of the Golf Rules entitled "Tournament Futures Winner." (ECF 89-3, p. 15.) Adams said [redacted]

[redacted].” (ECF 108-1, ¶ 63.) Purling, for his part, clarified that [redacted]” (Id.)

Adams later said that Butterworth had “[redacted].” (ECF 108-1, ¶ 64.) Williams responded, “[redacted].” (Id.) There were more comments and questions about [redacted], with one employee saying that “[redacted].” (ECF 108-1, ¶¶ 65–67.) Butterworth characterized the situation as “[redacted].” (ECF 108-1, ¶ 68.) He said he was “[redacted].” (ECF 108-1, ¶ 69.)

After research, Adams concluded [redacted].” (ECF 108-1, ¶ 74.) Paul Chopin, DraftKings' Director of Trading, described [redacted].” (ECF 108-1, ¶ 79.) Chopin noted that there were “[redacted].” (Id.) At least one DraftKings employee [redacted]. (ECF 108-1, ¶¶ 80–82.)

At some point, Baumohl [redacted]. (ECF 108-1, ¶ 75.) Chopin said [redacted]. (Id.) Chopin later said, “[redacted].” (ECF 108-1, ¶ 76.) Butterworth asked for “[redacted].” (ECF 108-1, ¶ 77.) Chopin later noted that [redacted].” (ECF 108-1, ¶ 78.)

DraftKings characterizes the internal discussion about the application of rules as a “healthy exercise to find the correct rule to void bets” that is in line with industry practice. (ECF 108-2, ¶¶ 81–82.) DraftKings argues that these discussions are legally irrelevant. (ECF 108-2, ¶¶ 82–88.) DraftKings also disputes the relevance of [redacted].” (ECF 108-2, ¶ 90.)

*D. Communications Between DraftKings and Bavas.*

After his bets were voided, Bavas emailed DraftKings to complain, saying that only one leg of Bet Nos. 1–4, his "Tournament Futures Winner" selection, should have been voided. (ECF 109-1, ¶ 71.) DraftKings responded by telling him that all his bets were being voided under the Tournament Futures Winner provision and Rules 4.6.4 (Events Influenced by Outside Factors) and 5.4.1 (Error Rule). (ECF 109-1, ¶ 74.) DraftKings said: "All futures bets are settled on the player winning the trophy per Tournament Futures Winner. The result of playoffs is taken into account. If futures bets were placed after the last shot of the previous completed round, bets will be void." (ECF 108-1, ¶ 73.) The Iowa Gaming and Racing Commission later investigated and did not find any regulatory violation in DraftKings' handling of the situation. (ECF 109-1, ¶ 78.)

*E. Alleged Damages.*

According to Bavas, he is entitled to $14,204,781.77 if all five bets are honored in full. (ECF 108-1, ¶ 86.) If (a) the Tournament Futures Winner provision is applied to the four of his five bets that selected Wyndham Clark to win the tournament and (b) a rule known as the "Dead Heat Rule" is applied to finishers who tied for twentieth place, Bavas calculates his damages to be $1,864,812.18. (ECF 108-1, ¶ 87; ECF 89-2, ¶¶ 59–60.) He also seeks statutory interest. (ECF 108-1, ¶ 87.)

## II. LEGAL ANALYSIS.

*A. Summary Judgment Standard.*

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Smith v. Ashland, Inc.*, 250 F.3d 1167, 1171 (8th Cir. 2001). "When cross-motions for summary judgment are presented to the Court, the standard summary judgment principles apply with equal force." *Wright v. Keokuk Cnty. Health Ctr.*, 399 F. Supp. 2d 938, 945–46 (S.D. Iowa 2005). "[T]he court views the record in the light most favorable to plaintiff when considering defendant's motion, and the court views the record in the light most favorable to defendant when considering plaintiff's motion." *Thompson-Harbach*, 359 F. Supp. 3d at 614.

*B. Summary of Relevant Provisions of the Terms of Use and House Rules.*

DraftKings uses an amalgamation of Rules for sports betting, starting, at an overarching level, with the Terms of Use and General Rules. (ECF 88-3, pp. 16, 22.) In addition, as relevant

here, there are Market Rules that define or explain certain types of bets and betting concepts at a general level (ECF 89-3, p. 3) and Golf Rules that define or explain golf-specific bets and concepts (ECF 89-3, p. 15).[4] DraftKings relies on four provisions to justify the decision to void Bavas' bets.

First, DraftKings relies on the Tournament Futures Winner provision of the Golf Rules, which states:

> **Tournament Futures Winner -** All futures bets are settled on the player/team winning the trophy. The result of playoffs is taken into account. All bets stand except for those placed on participants not competing in the first round. In the event that there is a change to or decrease in the booked number of rounds or openings played in the competition, wagers set on this market will stand if 36 holes of the tournament have been completed. If less than 36 holes have been completed, or futures bets were placed after the last shot of the previous completed round, bets will be void.

(ECF 89-3, p. 15.) The Market Rules define "Futures" betting to mean that "you choose from a list of alternatives and bet on where a participant wins or places within a specified position in the classification of the listed event/competition." (ECF 89-3, p. 4.)

Second, DraftKings relies on General Rule 4.6.4, which states:

> DraftKings reserves the right to withhold payment and/or to declare bets void on an event (or series of events), if DraftKings determines, in its sole discretion, that any of the following has occurred . . . 4. Any other occurrence that, in the reasonable discretion of DraftKings, would tend to show that the event (or series of events) was unduly influenced by factors outside of the event (or series of events) itself. Evidence of the above may be based on the size, volume or pattern of bets placed with DraftKings across any or all of its betting channels, as well as information received from other betting providers or officially recognized organizations.

(ECF 88-3, p. 24.) The Court will sometimes refer to this as the "Events Influenced by Outside Factors Rule."

Third, DraftKings relies on General Rule 5.4.8, which states:

> DraftKings reserves the right, at its own discretion, to declare a bet void, totally or partly, irrespective if the bet is settled, if it is obvious that any of the following circumstances have occurred: . . . 8. Where there is evidence of a series of bets each containing the same (or very similar) selection(s) having been placed by the same individual or syndicate of individuals.

(ECF 88-3, pp. 25–26.) The Court will sometimes refer to this as the "Series of Bets Rule."

---

[4] The parties filed the Market Rules and Golf Rules under seal. These Rules are, however, available to customers. Moreover, dissecting those Rules is important to understanding the Court's ruling. Accordingly, the text and analysis of those Rules will not be sealed.

Fourth, and finally, DraftKings relies on General Rule 5.4.1, which gives DraftKings the right "at its own discretion" to declare a bet void if "[b]ets have been offered, placed and/or accepted due to an Error." (ECF 88-3, p. 25.) In turn, General Rule 2.1 defines "Error" to include "a mistake, misprint, misinterpretation, mishearing, misreading, mistranslation, spelling mistake, technical hazard, registration error, transaction error, manifest error, force majeure and/or similar." (ECF 88-3, p. 22.) Examples include:

1. bets accepted during technical problems that would otherwise not have been accepted;
2. bets placed on events/offers that have already been decided;
3. bets on odds containing incorrect participants;
4. bets placed at odds that are materially different from those available in the general market at the time the bet was placed;
5. bets offered at odds which reflect an incorrect score situation; or else,
6. odds being clearly incorrect given the chance of the event occurring at the time the bet was placed.

(Id., pp. 22–23.)

In addition, but more generally, DraftKings relies on what it characterizes as an "independent right" in its "sole discretion" to refuse benefits or prizes if a customer "engage[s] in conduct or otherwise utilize[s] any information [DraftKings] deems to be improper, unfair or otherwise adverse to the operation of the Game or is in any way detrimental to other Game participants." (ECF 88-3, p. 17.) Under the Terms of Use, "improper" conduct includes "[a]ny violation of the Rules or the Terms of Use" and/or "[a]busing the Website in any way." (Id.)

*C. Summary of Iowa Contract Law.*

Under Iowa law, "[c]onstruction of a contract involves the determination of its legal effect, always a question of law." *Grinnell Select Ins. Co. v. Cont'l W. Ins. Co.*, 639 N.W.2d 31, 33 (Iowa 2002). "Interpretation—discerning the meaning of contractual language—is likewise a question of law for the court unless the meaning of disputed terms turns on extrinsic facts or choices among reasonable inferences." *Id.* "If the interpretation depends upon 'the credibility of extrinsic evidence or on a choice among reasonable inferences that can be drawn from the extrinsic evidence,' it is a job for the fact finder." *U.S. Bank, Nat'l Ass'n v. Bittner*, 986 N.W.2d 840, 847 (Iowa 2023) (quoting *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008)). "The question whether an ambiguity exists is also one of law." *Hartig Drug Co. v. Hartig*,

602 N.W.2d 794, 797 (Iowa 1999). "[A] contract is not ambiguous merely because the parties disagree over its meaning." *Id.* "Instead, an ambiguity occurs in a contract when a genuine uncertainty exists concerning which of two reasonable interpretations is proper. The existence of an ambiguity, however, can be determined only after all pertinent rules of interpretation have been considered." *Id.* The Iowa Supreme Court "generally construe[s] ambiguous boilerplate language against the drafter." *Peak v. Adams*, 799 N.W.2d 535, 548 (Iowa 2011).

*D. The Court Will Assuming Without Deciding that DraftKings Could Partially, But Not Completely, Void Bavas' Bets Under the Tournament Futures Winner Provision.*

1. Background.

DraftKings starts by arguing that Bavas' bets are void under the Tournament Futures Winner provision of the Golf Rules, which states:

> **Tournament Futures Winner -** All futures bets are settled on the player/team winning the trophy. The result of playoffs is taken into account. All bets stand except for those placed on participants not competing in the first round. In the event that there is a change to or decrease in the booked number of rounds or openings played in the competition, wagers set on this market will stand if 36 holes of the tournament have been completed. If less than 36 holes have been completed, or futures bets were placed after the last shot of the previous completed round, bets will be void.

(ECF 89-3, p. 15.) DraftKings relies, specifically, on the last two sentences, which the Court will refer to as the "Last Completed Round Clause." In DraftKings' view, because Bavas placed all five bets after the "after the last shot of the previous completed round," the bets are void under the Last Completed Round Clause.

As a threshold matter, it appears to be undisputed that Bavas' bets were "futures bets." This is confirmed by the Market Rules, which define "Futures" betting to mean that "you choose from a list of alternatives and bet on where a participant wins or places within a specified position in the classification of the listed event/competition." (ECF 89-3, p. 4.) Bavas' bets clearly fall within this definition, as he bet on which participant would win (Wyndham Clark) and where other participants would place.

2. The Tournament Futures Winner Provision Entitled DraftKings to Void Bets on Wyndham Clark to Win the Tournament.

The Court agrees with DraftKings that the Last Completed Round Clause entitled DraftKings to void Bavas' bets on Clark to win the Tournament. The language of the Clause addresses this exact situation by rendering void "futures bets [] placed after the last shot of the

previous completed round." (ECF 89-3, p. 15.) It follows that Bavas is not entitled to be paid out for betting that Clark would win the tournament. *See Petty v. Faith Bible Christian Outreach Ctr., Inc.*, 584 N.W.2d 303, 306 (Iowa 1998) ("[W]here the intent of the parties is expressed in clear and unambiguous language, we enforce the contract as written."). Bavas himself admits this.

This does not mean, however, that the remaining legs of Bavas' parlay bets are also per se void. To the contrary, under the Market Rules, the opposite is true: "In the event a Parlay contains a selection which is settled as void or push, then the individual selection will be excluded from the Parlay, and the odds of the Parlay will be recalculated to reflect the remaining selections in the Parlay." (ECF 91-3, p. 167.) Accordingly, the Court must analyze DraftKings' other arguments to determine whether it had the right to void Bavas' bets in their entirety.

3. <u>The Court Will Assume Without Deciding That the Last Completed Round Clause Does Not Apply to Bets on the Finishing Places of Non-Winners.</u>

The analysis starts with whether the Last Completed Round Clause applies to all types of futures bets or just futures bets on the tournament winner. DraftKings argues that it applies to all futures bets and thus renders void every leg of all five bets Bavas placed. Bavas, by contrast, points out that the Clause appears in a section entitled "Tournament Futures <u>**Winner**</u>" (emphasis added) and thus argues that it only applies to bets on which player will win the tournament, not bets on where non-winners will place.

From a big picture perspective, DraftKings has the better argument. There is no logical reason why DraftKings would void bets on the tournament winner when a tournament is called before the final round is played but not do the same for bets on the finishing places for non-winners. In either scenario, customers are essentially betting on the weather or other external factors instead of the golfers' competitive performance. It would make little sense to conclude that this is what the parties intended. *See Hartig*, 602 N.W.2d at 797 ("A cardinal rule of contract construction or interpretation is the intent of the parties must control.").

The problem for DraftKings, however, is that the Court cannot engage in a freewheeling exercise to achieve the goal that it believes DraftKings probably intended. Instead, the Court's analysis must be tethered to the contract language. *See, e.g.*, *Peak*, 799 N.W.2d at 543 ("The most important evidence of the parties' intentions at the time of contracting is the words of the contract."). Here, the language is convoluted. For example, the fact that the provision containing the Last Completed Round Clause is entitled "Tournament Futures <u>**Winner**</u>" suggests the Clause

only applies to bets on the tournament *winner*, not other bets. This argument is reinforced by the existence of a separate provision, entitled "Top Specified Finish," that specifically addresses the type of bets Bavas placed on where non-winning finishers would place. The Top Specified Finish provision does not contain the Last Completed Round Clause (or similar language). *See Greenfield v. Cincinnati Ins. Co.*, 737 N.W.2d 112, 120 (Iowa 2007) ("A cardinal rule of contract interpretation is that the use of substantially different language in provisions of a contract must have been intentional and must be recognized by a reviewing court.").

Relatedly, but perhaps even more importantly, the Last Completed Round Clause on its face applies only to "wagers set **on this market**" (emphasis added). The word "market" is never specifically defined, but there is a plausible argument that it refers narrowly to specific types of bets like who will win a tournament. This is because other provisions of the Golf Rules use the word "market" to describe specific bets, including "18 Hold 2 & 3 Ball Match Bet Markets," "Hole in One Markets," "To Make the Cut Market," and "Match Play Markets," among others. (ECF 89-3, pp. 16, 17, 20.) If "market" is interpreted narrowly to refer to specific types of bets, the fact that the Last Completed Round Clause only applies to bets "on this market" might mean that it applies only to bets on who will win the tournament (i.e., "Tournament Futures Winner" bets), not bets under the Top Specified Finish provision on where other finishers will place. *See Colwell v. MCNA Ins. Co.*, 960 N.W.2d 675, 679 (Iowa 2021) ("We attempt to interpret every word and every provision of a contract to give it effect, if possible.").

To that end, it is significant that some provisions (but not others) of the Golf Rules describe what will happen if a tournament ends with fewer rounds than expected being played. One example is the Tournament Futures Winner provision, as described above. Another is the Tournament Match Bets provision, which says that "if the scheduled number of rounds is reduced by bad weather, bets will be settled so long as there is a deemed tournament winner and a minimum of 36 holes played." (ECF 89-3, p. 16.) Similarly, many provisions state that bets are valid only if at least thirty-six holes are played. The fact that DraftKings placed this special language in some provisions but chose not to do so in the Top Specified Finish provision—which, again, is the provision that specifically governs the bets Bavas placed—suggests that bets placed on the Top Specified Finish of non-winners are not void under the Golf Rules simply because those bets are placed after the last completed round of a weather-shortened tournament. *See Greenfield*, 737 N.W.2d at 120.

To be sure, there is language supporting DraftKings' position, too, including the references in the Tournament Futures Winner provision to "all futures bets" and "futures bets." Given that the phrase "futures bets" does not appear anywhere else in the Golf Rules, DraftKings argues that the Last Completed Round Clause is intended to apply to *all* futures bets, including the ones placed on the finishing places of non-winners. In other words, DraftKings argues that the word "market" as used in the Last Completed Round Clause refers to futures bets generally, not simply futures bets on who will win the tournament. This is a reasonable argument, particularly given how illogical it would be to conclude that DraftKings intended to invalidate some futures bets that are placed after the last completed round of a weather-shortened tournament but not others.

These interpretive questions are thorny enough that the Court will not definitively resolve them. Instead, for the sake of simplicity, the Court will assume without deciding that the Last Completed Round Clause does not apply to bets on the finishing places of non-winners. For reasons explained below, this is immaterial to the outcome of the case because a different provision from the Rules—the Error Rule—allowed DraftKings to void Bavas' bets anyway.

*E. DraftKings Was Entitled Under the Error Rule to Void Bavas' Bets.*

DraftKings argues that three provisions of the General Rules justify the decision to void Bavas' bets: (i) General Rule 4.6.4 (Events Influenced by Outside Factors); (ii) General Rule 5.4.8 (Series of Bets); and (iii) General Rule 5.4.1 (Error). The Court doubts the first two are applicable here. In context, both are clearly focused on unusual betting activity that suggests the outcome of a competition might be rigged or that betting markets have been compromised by bettors using non-public information.

For example, the Events Influenced by Outside Factors Rule provides three specific examples of situations in which bets may be declared void based on outside influences: (1) "the integrity of the event has been called into question;" (2) "the price(s) or pool has been manipulated;" and (3) "Game-rigging has taken place, or the game is under investigation for such." (ECF 88-3, p. 24.) The Events Influenced by Outside Factors Rule then contains the catch-all language on which DraftKings relies, allowing bets to be declared void when there is "[a]ny other occurrence that, in the reasonable discretion of DraftKings, would tend to show that the event (or series of events) was unduly influenced by factors outside of the event (or series of events) itself." (Id.) When read in isolation, the catch-all language arguably supports DraftKings' position. When read in context, it does not. The weather does not affect the "integrity" of the competition, nor is

it akin to "[g]ame-rigging" or "manipulation." Accordingly—and because Iowa law requires contractual language to be read "in context rather than in isolation," *State v. Ross*, 941 N.W.2d 341, 348 (Iowa 2020)—it is difficult to interpret the Events Influenced by Outside Factors Rules as justifying DraftKings' decision to invalidate Bavas' bets. The same is true for the Series of Bets Rule, which, in context, allows DraftKings to declare bets void when unusual betting activity suggests the market has been compromised by inside information. Nothing like that is present here.

The Error Rule is different. It gives DraftKings broad discretion to declare a bet void if "bets have been offered, placed and/or accepted due to an Error." (ECF 88-3, p. 25, General Rule 5.4.1.) In turn, General Rule 2.1 defines "Error" to include "a mistake, misprint, misinterpretation, mishearing, misreading, mistranslation, spelling mistake, technical hazard, registration error, transaction error, manifest error, force majeure and/or similar." (ECF 88-3, p. 22.) General Rule 2.1 provides the following examples:

1. bets accepted during technical problems that would otherwise not have been accepted;
2. bets placed on events/offers that have already been decided;
3. bets on odds containing incorrect participants;
4. bets placed at odds that are materially different from those available in the general market at the time the bet was placed;
5. bets offered at odds which reflect an incorrect score situation; or else,
6. odds being clearly incorrect given the chance of the event occurring at the time the bet was placed.

(Id., pp. 22–23.)

The second and sixth examples are implicated here. When Bavas placed his bets, he received odds of 46,514.71 to 1 on his four parlay bets that included Wyndham Clark as the winner and 10,000.71 to 1 on the fifth parlay bet for the Top Twenty finishers. In context, these odds clearly were based on the likelihood of the relevant golfers finishing in the slotted positions *if Round Four was played*. They were not based on the possibility of Round Four being cancelled and the final leaderboard "already [having] been decided." Thus, the odds were "clearly incorrect given the chance of the event occurring at the time the bet was placed."

Stated differently, the "error" here was that Bavas was trying to bet on one thing (the weather) in a situation where DraftKings provided odds based on something else (the performance of the golfers if Round Four occurred). This is the type of "mistake . . . manifest error, force

majeure and/or similar" that resulted in "clearly incorrect" odds. DraftKings has the reasonable discretion in these circumstances to declare the bet void. *See Midwest Mgmt. Corp. v. Stephens*, 291 N.W.2d 896, 913 (Iowa 1980) (recognizing that when a contract gives a party discretion, it must be exercised "in a reasonable manner on the basis of fair dealing and good faith"). Because DraftKings did not exceed the boundaries of its discretion, no breach of contract occurred.

In urging the Court to conclude otherwise, Bavas points out that DraftKings traders recognized in the late hours of February 3, 2024, that some customers were placing bets based on the possibility of Round Four not being played. Because DraftKings chose not to close the market, Bavas argues that DraftKings cannot claim there was an "error" of the type contemplated by the Error Rule.

Bavas' argument fails because it runs headlong into a different aspect of the Error Rule. The undisputed facts show that DraftKings chose not to close the relevant betting market or change the odds because the company's decision-makers believed that bets like the ones placed by Bavas would be void if Round Four was not played. For reasons explained in the preceding section, this belief was reasonable given the language of the Golf Rules, some of which supports DraftKings' position. Thus, even if, with benefit of hindsight, the decision-makers were wrong, their misjudgment would amount to the type of "mistake," "misinterpretation," and/or "misreading" that falls within the definition of "[e]rror" under the Error Rule. *Cf. McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 531 (Iowa 2015) (holding that whether casino acted negligently was irrelevant to whether the customer had the right to erroneous payout). It follows that DraftKings had the contractual discretion to void Bavas' bets.

*F. Because DraftKings Had the Right to Void Bavas' Bets, His Claims Fail.*

Bavas' fifteen claims arise under three theories: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) violation of the Iowa Consumer Fraud Act. (ECF 1-1, Counts I–XV.) Each theory is asserted once for each of Bet Nos. 1–5. (Id.) All fifteen claims rest on the premise that DraftKings did not have the authority under the Terms of Use or Rules to void Bavas' bets. Because this premise is incorrect, all fifteen claims fail. *See McKee*, 864 N.W.2d at 532 (holding that Consumer Fraud Act claim failed as a matter of law when customer had no contractual right to payout in the first instance); *Bagelmann v. First Nat. Bank*, 823 N.W.2d 18, 34 (Iowa 2012) (affirming dismissal of implied duty of good faith and fair dealing claim where defendant's conduct was consistent with contractual rights and obligations).

**III. CONCLUSION.**

DraftKings offered odds to Bavas on the premise that Round Four of the Tournament would occur as scheduled. Bavas accepted those odds on the premise that Round Four would be cancelled. These circumstances amount to the type of "error" for which DraftKings has discretion to void Bavas' bets and return his money. The Court therefore GRANTS DraftKings' Motion for Summary Judgment (ECF 88) and DENIES Bavas' Motion for Summary Judgment (ECF 91). The Court DENIES AS MOOT all other pending motions (ECF 123; ECF 125; ECF 126; ECF 127) except Defendants' Motion for Protective Order (ECF 47), which will be decided in due course. The Clerk of Court is directed to enter Judgment for Defendants.

Two versions of this Order are being filed, both under seal. The first version is unredacted and will remain under seal. The second version shows (in purple highlighting) the redactions the Court intends to make to the Order when it is made available on the public docket. The second version will remain under seal only temporarily. Within seven (7) days of the date of this Order, the parties must file objections identifying: (a) any additional portions of the second version that they believe should be redacted when the document is made available on the public docket; and/or (b) any portions of the second version that are currently proposed for redaction that they believe should not be redacted when the document is made available on the public docket. If no objections are filed, the Court will make the second version available to the public in its current form (except with the purple highlighted language fully redacted). If objections are filed, the Court will review them and make the changes it deems appropriate before making the second version available to the public in redacted form. To assist the Court in this endeavor, the parties' objections should explain the basis for any proposed changes.

**IT IS SO ORDERED.**

Dated: July 8, 2026

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE